William R. Mitchell (SBN 101858)
Justin M. Buhr (SBN 262861)
LOGAN RETOSKE LLP
31351 Rancho Viejo Road, Suite 202
San Juan Capistrano, CA 92675
Tel: 949-661-8610
Fax: 949-661-8611
Email: bill@loganretoske.com

Attorney for AMERICAN DEBT SERVICES and QUALITY SUPPORT SERVICES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HEATHER L. NEWTON, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> AMERICAN DEBT SERVICES, et al, <br><br> Defendants. | Case No.: 3:11-cv-03228 EMC <br><br> **DECLARATION OF ERIC GRAZIANO IN SUPPORT OF DEFENDANTS AMERICAN DEBT SERVICES, INC.'S AND QUALITY SUPPORT SERVICES, LLC'S REPLY PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION.** |

I, Eric Graziano, declare and state as follows:

1. I, Eric Graziano, am the President of American Debt Services, Inc. ("ADS"). As part of my responsibilities, I have direct personal knowledge of ADS's business operations and procedures. I also have personal knowledge of the facts stated herein or through a review or records over which I have care, custody and control. This Declaration is made in support of ADS's and Quality Support Services, LLC's ("QSS") Reply to Plaintiff's Opposition to Motion to Compel Arbitration.

//

2. ADS status as an active corporation within California was recently suspended.
3. ADS was delinquent in filing certain documents with the Franchise Tax Board ("FTB").
4. ADS has completed and filed all documents with the FTB necessary to be reinstated as an active corporation within the State of California.
5. On or about August 24, 2009, Plaintiff Heather Newton and ADS executed a Debt Settlement Agreement (the "Agreement"). A true and correct copy of this Agreement is attached hereto as Exhibit A.
6. ADS uses DocuSign to effectuate contracts between clients and ADS.
7. ADS uses DocuSign because a DocuSign signature is a valid and enforceable electronic signature.
8. The foregoing facts are known by me to be true, of my own personal knowledge. I am competent to testify to such acts, and would so testify if I appeared in court as a witness at the trial of this claim.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury and of the laws of the United States that the foregoing is true and correct.

DATED: January 17, 2012

By _____
Eric Garziano

---

**DECLARATION OF ERIC GRAZIANO – 3:11-cv-03228-EMC**
-2-

## CERTIFICATE OF SERVICE

I hereby certify that on this 17 day of January, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                     /s/ *Andrea Daub*
                                                    Andrea Daub

EXHIBIT "A"

DocuSign Envelope ID: A4B5CF84-1C42-47B7-8F73-12D9A177DD8C

American Debt Services

## DEBT SETTLEMENT AGREEMENT

This Debt Settlement ("Agreement") is made this   August 24, 2009   between American Debt Services, LLC., 900 E. Hamilton Avenue Campbell, CA. 95008; (888-827-2230), and   Heather L. Newton   ("Client"). This contract shall become operative on the date executed by both Parties.

1. **Services.** American Debt Services agrees to provide debt settlement and restructure services to Client under the terms and conditions of this Agreement (the "Service"). This Service consists of negotiating with creditors on behalf of Client for reduction of unsecured debt and formulation of a payment plan. American Debt Services will use commercially reasonable efforts to settle the Program Debt, as defined below. American Debt Services will timely respond to all Client inquiries. American Debt Services will maintain the confidentiality of the personal financial information provided by Client.

On acceptance of Client into the program, American Debt Services will provide a "Welcome Packet" containing a Schedule of Program Debt, a Payment Schedule, a Fund Transfer Schedule, Account Agreement and Disclosure Statement, along with further information about the program.

2. **Client Obligations.** Client will perform the following obligations:

(a) Client will satisfy Client's financial obligations to creditor through the process known as debt settlement. Client voluntarily enrolled into a debt settlement program offered by American Debt Services after being educated on the various options available. The success of the debt settlement is based on the ability of Client to set aside funds, which will allow American Debt Services to negotiate the settlement of debts.

(b) Client shall inform American Debt Services of any additional debtor, co-signer or guarantor of any of Program Debt. Client is responsible for notifying such additional debtor, co-signer or guarantor.

(c) Client will provide a written list of all unsecured debts that he or she wants American Debt Services to settle and/or restructure. American Debt Services has the right in its sole discretion to exclude certain debts, and will consult with Client to develop a mutually agreeable list of debts (the "Program Debt"). A Schedule or Program Debt is incorporated into this contract by reference. This Schedule will contain the name of the creditor, account number and outstanding balance. Debts added to Program Debt after signing this Agreement will be subject to Additional fees. All information provided by Client must be truthful and accurate. American Debt Services is under no obligation to verify information supplied by Client, but may do so as its sole discretion.

(d) Client will forward all correspondence from creditors to American Debt Services, including collection letters. If creditors telephone, Client will refer them to American Debt Services. Client will not discuss his or her financial situation with creditors or discuss settlement. If the creditor continues to make contact, Client will contact American Debt Services and provide the creditor's name, telephone number and name of contact person.

(e) Client will timely respond to all calls and requests for documentation from American Debt Services and will promptly advise American Debt Services of any and all changes to Client contact information (i.e. telephone, address, email, etc.).

DocuSign Envelope ID: A4B8CF84-1C42-47B7-8F73-1209A177DD9C

(f) Over the duration of the program, Client will set aside in an existing or new bank or savings account approximately 40-45% of the Program Debt. The monies set aside by Client shall be deposited into a special purpose account established on Client's behalf with Global Client Solutions ("GCS"), Note World Servicing Center ("NSC") or any third party trust account selected by Client. The funds in the account will be used to satisfy settlement of the Program Debt negotiated by American Debt Services and to pay American Debt Services its Service Fee. The number of months that funds are to be set aside and the amount to be set aside each month will be determined by American Debt Services from the information contained on the Schedule of Program Debt. The Payment Schedule, which documents the results, is incorporated into this Agreement by reference. The monies set aside are to be used for Program Debt and service fee payment until the Program Debt is settled or upon termination. Client and only Client will be in control of all settlement funds and under no circumstances will American Debt Services have custody or control of the funds Client set aside to fund debt settlement.

(g) Client shall make no further charges to any account listed on the Schedule of Program Debt. Client will not continue to incur debt or open new charge accounts, except that Client may retain and use one charge card for emergency purposes only. Client will immediately inform American Debt Services of such emergency use. This account shall not be included in the American Debt Services program and cannot be issued from the same bank as any account submitted in the program.

(h) Client will not refinance any real or personal property, except for the sole purpose of lowering interest rate or obtaining funds to settle a debt. Client will inform American Debt Services of his or her intent to refinance prior to doing so.

3. Compensation. In consideration for the Service provided by American Debt Services, Client shall pay to American Debt Services a Service Fee equal to 15% of the Program Debt. Approximately 10% to 40% of the Service Fee will be paid upon acceptance into the program. The remaining Service Fee owed to American Debt Services will be paid as defined in the Payment Schedule. Client agrees that he or she will not make or request changes to the Fund Transfer Schedule for the first 90 days following commencement of Client's participation in the program or the first three payments, whichever comes first. The Payment Schedule will specify the amount of the monthly Service Fee payment. Client authorizes Global Client Solutions, Note World Servicing Center or the trust account established by Client to initiate debit of Client's bank or savings account, in accordance with the Electronic Payment Authorization, for the payment of the Service Fee. The Electronic Payment Authorization is incorporated by reference into this Agreement.

Client understands American Debt Services fee is not refundable. American Debt Services will accept no more than two insufficient funds (NSF's) or payment reschedules in any 12-month period. Excessive NSF's or payment reschedules are grounds for termination. There is a $25 fee for each NSF or payment reschedule. All payment reschedules need to be authorized by a Client Service representative, and must be done at least 5 business days prior to the original payment date. A payment reschedule fee of $25 will be assessed. If a client removes an account and or accounts and later in the program reinstates said accounts a processing fee of $100 will be assessed. If Client removes an account after fees have been paid in full, no credit will be applied. Client understands and agrees that client is responsible for paying Client's special purpose accounts maintenance fee, which currently is no greater than $9.50 per month. Such imposed fee is in addition to and separate from the American Debt Services. Client hereby authorizes such fee to be automatically withdrawn from his/her special purpose account.

4. Settlement Process. At such time American Debt Services has received the first payment directed toward the settlement of Program Debt, American Debt Services will commence the Service. American Debt Services will advise Client of all good faith offers made by creditors and debt collectors, and of their acceptance of any offers made by American Debt Services. American Debt Services will not settle any account without the approval of Client, who has absolute discretion to accept or reject any settlement offer. When a settlement offer is presented to Client, Client must respond to American Debt Services within 48 hours of notification. On Client's approval of the restructure or settlement of a particular creditor account, Client will timely ensure payment for his or her settlement account in accordance with the settlement or payment plan. At such time as listed debt has been negotiated and settlement is reached, American Debt Services considers the debt settled and is not responsible for Client's failure to satisfy the terms of the settlement.

(a) In the event Client comes into a lump sum of money and wishes to settle an account before original designated completion date, Client must first pay American Debt Services Fee. The remainder of the lump sum will be utilized in settling Client's unresolved program debt.

(b) In the event a settlement offer is reached and Client does not have required funds available (as per Fund Transfer Schedule), one warning will be given. If, for a second time, Client does not have required funds available in settlement account (as per Fund Transfer Schedule), Client may be cancelled from program due to breach of contract. No service fees will be refunded.

DocuSign Envelope ID: A4B8CF84-1C42-47B7-8F73-1209A177DD9C

(e) In the event a Term Settlement has entered into by Client, Client will be obligated to have funds available for disbursement to creditor in accordance with the terms of the Term Settlement. A debt that is subject to a Term Settlement will be removed from the Program if Client fails to make or seeks to defer a payment under the Term Settlement.

5. Term. This Agreement will terminate when each of the credit accounts representing the Program Debt is satisfied or upon termination by either party as provided below. In addition, Client has a limited right of rescission as provided below.

6. American Debt Services provides consumers with a method of debt resolution known as debt settlement. Debt settlement is an aggressive method of debt management, which depends on the negotiation of mutually agreeable settlement between the consumers and the creditors. American Debt Services wants the Client to understand both the potential benefits and pitfalls that may rise out of the debt settlement process and to have reasonable expectation regarding the outcome.

BY SIGNING BELOW, CLIENT ACKNOWLEDGES THAT American Debt Services HAS EXPLAINED AND CLIENT UNDERSTANDS ALL THE ISSUES BELOW:

(a) Client understands that the Debt Settlement Program was explained in detail, including full disclosure of the risks involved in Debt Settlement on the original consultation and was supported and explained in their recorded compliance call. Client states that he/she has read, understands and accepts all of the terms of this Agreement.

(b) Client is enrolling into a debt settlement program after voluntarily seeking assistance of American Debt Services. Client is set to negotiate mutually agreeable settlements between Client and creditor(s) for payment of certain unsecured debt(s) described in the schedule of Program Debt.

(c) The client debt settlement program assumes an effort that will continue for many months. The time needed to produce a settlement depends on a number of factors. Those may include: (a) Client's financial hardship, (b) the age and balance of the accounts that Client owes to the creditor, (c) funds Client has available to pay for a settlement, and (d) the willingness of individual creditors to enter into the debt negotiations and settle accounts.

(d) Client understands that specific results cannot be predicted or guaranteed by American Debt Services. Summaries of the funds required for settlement, monthly savings, and the specified period of time to complete the Debt Settlement program were solely based on best estimate basis. Client understands the outcome of American Debt Services debt settlement services cannot be guaranteed and individual results will vary. Creditors are likely to continue collection efforts on delinquent accounts while enrolled in the program. Collection efforts can include phone calls, collection letters and charge off reporting to the credit bureaus, contracting or selling your accounts to collection agencies or law offices, and lawsuits in judgments by the courts.

(e) The Client Creditor Worksheet used in setting up program fees and length is based upon an estimated program settlement of 40 percent. The use of the 40 percent does not reflect the actual amount the debts subject to the Program will settle for.

(f) Balance transfers and accounts that are subject to a pending legal action or a judgment has been entered will settle at higher percentages.

(g) The performance of this Service will likely have an adverse effect on Client's credit rating and American Debt Services is not responsible for the actions of the creditors in response to settlement efforts.

(h) The Service does not include the modification, correction or improvement of Client's credit reports. American Debt Services does not offer any form of credit repair or improvement to credit rating. Client does not expect to receive any. Upon settlement of an account, American Debt Services will send proof of settlement to Client, who may forward it to credit reporting agencies.

(i) In the event a creditor or debt collector pursues legal remedies against Client, neither this Agreement nor the Service includes legal representation.

DocuSign Envelope ID: A4B8CF84-1C42-4787-8F73-1209A177DD9C

(j) American Debt Services may retain legal counsel in the performance of the Service, but such counsel represents American Debt Services and not the individual Client.

(k) Neither this Agreement nor the Service includes any tax representation, such as audit and verification, debt retirement, or Internal Revenue Service tax negotiation;

(l) The discharge of indebtness is considered taxable income; Client should seek the advice of a tax professional.

(m) Any payment by Client to a creditor listed in the Schedule of Program Debt, except in accordance with a settlement plan negotiated by American Debt Services, does not constitute a payment toward the program

(n) American Debt Services is not engaged in the practice of law and does not provide legal services to its clients. In the event a creditor or debt collector pursues legal action against Client, neither this Agreement nor the Debt Settlement Program includes legal representation. Client acknowledges and agrees that legal services are to be obtained independently by Client and Client is not relying on American Debt Services in any way for legal advice nor shall American Debt Services be a party to any claim, arbitration or legal proceeding arising out of the hiring or seeking any legal advice.

(o) Client has represented to American Debt Services that Client is unable to meet the minimum payments required by Client's creditors. If Client does not make required minimum payments to Client's creditors, Client may be breaking the terms of Client's agreements with them and Client's actions will probably be reported to consumer reporting agencies as late, delinquent, charged-off or past due balances. Client's actions will probably be reported to consumer reporting agencies as late, delinquent, charged-off or past due balances. Client's creditor may also raise the interest rate on Client's account and impose other penalties (late charges). Clients account balance may continue to grow as the creditor adds accrued interest, late fees, over-limit fees and penalties. Client balance may increase during the term of this Agreement.

7. Termination. Either party may terminate this Agreement upon 3 days written notice to the other party.

(a) American Debt Services may immediately terminate this Agreement if Client fails to timely return documents, fails to timely respond to American Debt Services, fails to set aside money in accordance with the Fund Transfer Schedule or fails to pay a Service Fee when due. There is a $75 processing fee for cancellations after 3 days and prior to the date of the first payment.

(b) Client will be terminated from program immediately if found to have charged or continued to have charged on any credit card, personal loan or debt entered into the program on or after entering the debt settlement program.

8. Indemnity. Client agrees to indemnify and defend American Debt Services for any liability or claims arising out of the Agreement or the services requested.

9. Arbitration/Statute of Limitations. All disputes or claims between the parties related to this Agreement shall be submitted to binding arbitration in accordance with the rules of American Arbitration Association. Any arbitration proceedings brought by Client shall take place in Orange County, California. Judgment upon the decision of the arbitrator may be entered into any court having jurisdiction. American Debt Services is responsible for the full payment of the filing fee and the costs of the arbitrator as required by the American Arbitration Association. However, all other expenses of the arbitration shall be borne equally by the parties and each party is responsible for their own attorney fees and costs. Any claim brought pursuant to this Agreement must be filed within one (1) year from the date claim or dispute.

10. Choice of Law. The laws of the state of California will govern this Agreement without regard to the conflict of law provisions thereof.

11. Integration. This Agreement and the Fund Transfer/Payment Schedules are the complete and exclusive statement of the agreement and supersedes any proposal, prior agreement, oral or written, and any other communications relating to the settlement of debt.

DocuSign Envelope ID: A4B8CF84-1C42-47B7-8F73-1209A177CD9C

12. **Notice of Cancellation.** Client may cancel this agreement without penalty or obligation at any time before midnight of the fifth business day after you have signed the agreement. In order to cancel, you must provide timely written notice to company.

13. **Amendment.** This Agreement may not be changed, amended, terminated, rescinded or discharged, except by a writing executed by the parties hereto, except as provided in Paragraph 3 above relating to NSF's and reschedules, and no waiver of any of the provisions or conditions of this Agreement or any of the rights of a party here to shall be effective or binding unless such waiver shall be in writing and signed by the party claimed to have given waiver.

(*) **Severability.** If any of the above provisions are held to be invalid or unenforceable, the remaining provisions will not be affected.

14. If Client's creditor settles Client's debt before it is charged off for $600 or more than Client owed, the savings may be reported by Creditor to the IRS as Discharged of Indebtness income. Client may wish to consult a tax advisor to determine whether Client's individual circumstances may permit Client to exclude such Discharge of Indebtness Income from Client's reportable due to insolvancy. For more information on tax ramifications to Client personally you may also wish to consult a CPA or Tax Attorney and to refer to the IRS website www.ustread.irs.gov IRS Publication 908- "Bankruptcy Tax Guide" and IRS Form 982, Reduction of Tax Attributes Due to Discharge of Indebtness available on the IRS website.

15. **Limitation and Exclusion of Damages.** NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR INCIDENTAL, SPECIAL, INDIRECT, EXEMPLARY, OR CONSEQUENTIAL DAMAGES ARISING FROM THIS AGREEMENT OR THE PROVISION OF THE SERVICE, EVEN IF A PARTY HAS BEEN NOTIFIED OF THE POSSIBILITY OF SUCH DAMAGES. THE PARTIES ACKNOWLEDGE THAT THE OTHER PORTIONS OF THIS AGREEMENT HAVE BEEN MADE IN RELIANCE OF THIS SELECTION.

| | | | |
|---|---|---|---|
| Client Name (Print): | Heather L. Newton | Client Signature: *Heather L. Newton* (DocuSigned By Heather L. Newton) | |
| | | Date: | 8/24/2009 |
| Co-Client Name (Print): | | Co-Client Signature: | |
| | | Date: | 8/24/2009 |

