1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8    HEATHER NEWTON,                         No. C-11-3228 EMC

9              Plaintiff,

10         v.                                **ORDER DENYING DEFENDANTS'**
                                             **MOTIONS TO COMPEL**
11   AMERICAN DEBT SERVICES, INC., *et al.*, **ARBITRATION**

12             Defendants.                   **(Docket Nos. 36, 39)**

13   _____/

14

15

16         Defendants' motions to compel arbitration came on before the Court on January 27, 2012.

17   Docket Nos. 36, 39.  For the reasons set forth below, the Court **DENIES** Defendants' motions to

18   compel arbitration.

19                  **I.    FACTUAL & PROCEDURAL HISTORY**

20         In August 2009, Plaintiff Heather L. Newton responded to an advertisement by Defendant

21   American Debt Services, Inc. ("ADS"), and spoke to a salesman who stated that ADS could settle

22   her credit card debt for half of the balance owed.  Docket No. 11 ¶¶ 31, 32 ("FAC").  While

23   speaking to the salesman, Plaintiff was directed to a website where the salesman instructed her to

24   submit information about herself.  FAC ¶ 33.  Shortly after, Plaintiff received a "Welcome Packet"

25   purportedly from Defendant ADS, but allegedly from Defendant Quality Support Services, LLC

26   ("QSS").  FAC ¶¶ 34, 35.  The Welcome Packet stated that Defendants would help settle Plaintiff's

27   debt and provide assistance should a creditor file suit.  FAC ¶ 36.

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    The Welcome Packet also contained a "Special Purpose Account Application" and "Account

2  Agreement and Disclosure Statement."  FAC ¶ 34.  The Special Purpose Account Application

3  incorporated by reference the Account Agreement and Disclosure Statement, which contained on its

4  back side an arbitration clause.  Docket No. 37-2.  Plaintiff filled out the Application, establishing a

5  "Special Purpose Account" with Defendant Rocky Mountain Bank & Trust ("RMBT").  FAC ¶ 37.

6  Defendant RMBT, through its agent Global Client Solutions, LLC ("GCS"), was authorized to debit

7  Plaintiff's bank account at Golden One Credit Union to fund the Special Purpose Account.  FAC ¶

8  38.  Defendant GCS would then transfer Plaintiff's first three payments to Defendants as non-

9  refundable fees.  FAC ¶ 39.  The remainder was to be used to fund settlements with Plaintiff's

10  creditors.  FAC ¶ 40.

11    Following Defendants' instructions, Plaintiff stopped communicating with her creditors.

12  FAC ¶ 41.  In March 2010, Bank of America contacted Plaintiff because her account was past due.

13  FAC ¶ 42.  When Plaintiff explained about her payment plan with Defendants, she was informed

14  that Defendants never contacted Bank of America and that Bank of America did not work with debt

15  settlement companies.  FAC ¶¶ 42-44.  Plaintiff agreed to make four payments to Bank of America

16  of $550.  FAC ¶ 45.

17    To make these payments, Plaintiff sought to use the funds from her Special Purpose Account.

18  By this point, Plaintiff had made payments of $2,806.05 into the Special Purpose Account; however,

19  only $1,200 remained after Defendants' fees were deducted.  FAC ¶ 46.  When Plaintiff tried to use

20  pay this $1,200 to Bank of America, Defendants refused to release the funds until Plaintiff promised

21  to make her remaining payments to Bank of America through the Special Purpose Account.  FAC ¶

22  49.  This permitted Defendants to keep 25% of the deposited funds as non-refundable fees, even

23  though Defendants had no role in negotiating the settlement with Bank of America.  FAC ¶ 50.

24    In April 2010, Chase brought suit against Plaintiff based on her failure to satisfy her account.

25  FAC ¶ 51.  When Plaintiff requested help from Defendants, Defendants informed her that they could

26  not help her.  FAC ¶¶ 52-53.  Plaintiff eventually settled the suit with Chase with the help of a pro

27  bono legal clinic.  FAC ¶ 56.

28

United States District Court

For the Northern District of California

Plaintiff eventually discovered that Defendants had not contacted any of her creditors in the eight months she had been in the program.  FAC ¶ 54.  Plaintiff then terminated Defendant ADS's services, requesting a refund of her money in the Special Purpose Account.  FAC ¶ 57.  Defendants eventually refunded $70.04 to Plaintiff.  FAC ¶ 59.  In total, Plaintiff paid $4,206.50 into the Special Purpose Account.  Of that, $70.04 was refunded, $2,200 went to Bank of America, and $1,936.46 was kept by Defendants.  FAC ¶ 60.

Plaintiff then brought the instant class action suit against Defendants, alleging: (1) violations of California Civil Code § 1750 et seq., (2) violations of 15 U.S.C. § 1679 et seq., (3) violations of California Business & Professions Code § 17200 et seq., (4) interference with contractual relations, and (5) negligence.  Defendants now move to compel arbitration.  Docket Nos. 36 ("GCS Motion"), Docket No. 39 ("ADS Motion").

## II.   DISCUSSION

A.    Standard of Review

The central purpose of the Federal Arbitration Act  ("FAA") "is to ensure that private agreements to arbitrate are enforced according to their terms."  *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011).  In order to enforce an arbitration agreement, a court shall issue an affirmative order to proceed in arbitration if the court is satisfied "that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4 (2006).  If the making of the arbitration agreement or the failure to perform the agreement is at issue, the court will proceed to trial on the issue.  *Id.*  When deciding a petition to compel arbitration, the Court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Arbitration is a matter of contract.  *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648 (1986).  Thus, "[a]lthough 'courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions,' general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements."  *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting

**United States District Court**

For the Northern District of California

1  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  However, even generally applicable

2  doctrines such as duress or unconscionability cannot be applied in a way that disfavors and

3  undermines arbitration.  *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1747 (2011).  Thus, a

4  rule that would "interfere with fundamental attributes of arbitration" cannot be applied to invalidate

5  an arbitration agreement, as such rules would disserve the overarching purpose of the FAA "to

6  ensure the enforcement of arbitration agreements according to their terms so as to facilitate

7  streamlined proceedings."  *Id.* at 1748.

8  B.      Defendants GCS's and RMBT's Motion to Compel Arbitration

9          Defendants GCS and RMBT move to compel arbitration based on Plaintiff's signing the

10  Special Purpose Account Application, which incorporated by reference the terms contained in the

11  Account Agreement and Disclosure Statement ("Agreement").  GCS Motion at 3.  The Agreement's

12  arbitration clause, located on the back side of the Agreement, states:

13          In the event of a dispute or claim relating in any way to this
                Agreement or our services, you agree that such dispute shall be
14          resolved by binding arbitration in Tulsa[,] Oklahoma utilizing a
                qualified independent arbitrator of Global's choosing.  The decision of
15          an arbitrator will be final and subject to enforcement in a court of
                competent jurisdiction.

16

17  Docket No. 37-2.

18          Plaintiff raises two challenges to the arbitration clause: (1) there was no agreement to

19  arbitrate, and (2) the arbitration clause is unconscionable.  Docket No. 44 at 1 ("Opp. to GCS").

20          1.      Plaintiff's Ability to Challenge the Arbitration Clause

21          As an initial matter, Defendants GCS and RMBT argue that because Plaintiff's complaint

22  challenges the validity of the Agreement as a whole, rather than the specific arbitration clause,

23  Plaintiff's challenge must be submitted to arbitration.  GCS Motion at 6.  In *Buckeye Check*

24  *Cashing, Inc. v. Cardegna*, the U.S. Supreme Court held that unless "the challenge is to the

25  arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first

26  instance."  546 U.S. 440, 445-46 (2006).  Thus, "the material question is whether the challenge to

27  the arbitration provision is severable from the challenge to the contract as a whole."  *Bridge Fund*

28  *Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1001 (9th Cir. 2010).

4

United States District Court

For the Northern District of California

In the Ninth Circuit, the plaintiff is not required to specifically challenge the validity of an arbitration clause in the complaint. *Id.* at 1002. This rule is justified because:

> in cases in which the arbitration clause's invalidity is an entirely distinct issue from the contract claims in the case . . . we would not generally expect the plaintiff to raise claims against the validity of the arbitration clause in the complaint, because such claims generally would be unrelated to plaintiff's principle prayer for relief. An independent challenge to the arbitration would became relevant *only at the point plaintiff is required to oppose a motion to compel*. In such a case . . . the challenge to the validity of the arbitration provision would usually appear not in the complaint, but in the pleadings resisting a motion to compel arbitration. . . . Accordingly, we look not only to the complaint, but to Plaintiffs' motion papers, to determine if Plaintiffs' objections to the arbitration clause are severable from Plaintiffs' challenge to the validity of the franchise agreement as a whole.

*Id.* at 1001-02 (emphasis added). Applying this rule, the Ninth Circuit found that the plaintiffs' challenge to a franchise agreement was based on fraudulent inducement, whereas the plaintiffs' challenge to the arbitration provision was based on unconscionability.[1] *Id.* at 1002. Thus, the challenge to the franchise agreement was distinct from the challenge to the arbitration provision, and the question of arbitrability was properly decided by the court.[2] *Id.*

As applied to the instant case, Plaintiff is not required to challenge the validity of the arbitration clause in her complaint. Instead, Plaintiff's challenge to the arbitration clause in her opposition papers to Defendants' motions to compel is sufficient, as long as these challenges are specific to the arbitration clause. Plaintiff's challenge to the arbitration clause concern whether Plaintiff agreed to arbitrate and whether the arbitration clause is unconscionable. Opp. to GCS at 1.

---

[1] For example, the plaintiffs argued that the arbitration clause was not mutually entered into, contained invalid place and manner restrictions, limited damages, shortened the statute of limitations, and banned class and consolidated actions. *Id.* at 1002.

[2] Defendants GCS and RMBT argue that *Bridge Fund* was overruled by *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). GCS Reply at 2-3. GCS and RMBT argue that under *Concepcion*, Plaintiff cannot limit her attack to the arbitration clause. GCS Reply at 2-3. However, *Concepcion* does not stand for the proposition that a plaintiff cannot only challenge an arbitration clause, even if the challenge relies on general contract defenses. Rather, *Concepcion* confirmed the rule that FAA's saving clause "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." 131 S. Ct. at 1746 (citing *Doctor's Assocs., Inc.*, 517 U.S. at 687 (finding that "[c]ourts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions")). *Concepcion* concerned to scope of permissibly challenges to an arbitration clause, not whether a challenge to an arbitration may be decided by a court.

United States District Court

For the Northern District of California

1    These challenges are distinct from the substantive causes of action in Plaintiff's complaint which

2    relate to the contract itself; these claims focus on whether Defendants made misrepresentations to

3    induce the sale of their services to consumers, were negligent in providing their services, or charged

4    illegal fees.  FAC ¶¶ 73, 99, 121.  Thus, because Plaintiff has made a separate challenge to the

5    arbitration clause, the Court will determine whether the arbitration clause distinct and separate from

6    the more general contract provisions at issue is enforceable.

7              2.    Plaintiff's Challenges to the Arbitration Clause

8                   a.    Agreement to Arbitrate

9         "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration

10   any dispute which he has not agreed so to submit."  *AT&T Techs., Inc.*, 475 U.S. at 648.  Thus,

11   "when one party disputes 'the making of the arbitration agreement,' the [FAA] requires that 'the

12   court proceed summarily to the trial thereof' before compelling arbitration under the agreement."

13   *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007).  Under California law, the party

14   seeking to compel arbitration has the burden of proving its existence by a preponderance of the

15   evidence.  *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

16        Defendants GCS and RMBT argue that an agreement to arbitrate was formed when Plaintiff

17   electronically signed the Special Account Application on August 24, 2009 ("August 2009

18   Application"), and again when Plaintiff signed the Special Account Application that came with the

19   Welcome Packet ("September 2009 Application").  Docket No. 37-1; Docket No. 37-4.  Parties are

20   unclear as to the time line of events, but it appears that the August 2009 Application was signed

21   when Plaintiff first contacted Defendant ADS and spoke to a salesman who directed her to fill out

22   information on a website.  FAC ¶¶ 32-33; Docket No. 37-1.  This August 2009 Application

23   permitted Defendants to withdraw money from Plaintiff's Bank of America Account.  Defendants

24   ADS and QSS then sent the Welcome Packet to Plaintiff, which contained another Special Account

25   Application and the Agreement containing the arbitration clause.  FAC ¶ 34.  Plaintiff again filled

26   out the application, instructing Defendants to withdraw funds from her Golden One account.  Docket

27   No. 37-4.  This application appears to be the September 2009 Application, although it is dated

28   August 9, 2009.

6

United States District Court

For the Northern District of California

1    The Court finds that Defendants GCS and RMBT have not demonstrated that the August

2    2009 Application created an agreement to arbitrate because there is no evidence the arbitration terms

3    were available to Plaintiff when she signed the document.  In order "[f]or the terms of another

4    document to be incorporated into the document executed by the parties . . . the reference must be

5    clear and unequivocal [and] must be called to the attention of the other party and he must consent

6    thereto, and the terms of the incorporated document must be known or easily available to the

7    contracting parties."  *Wolschlager v. Fidelity Nat'l Trust Ins. Co.*, 111 Cal. App. 4th 784, 790 (2003)

8    (citation omitted).  In the instant case, the August 2009 Application incorporated by reference the

9    terms of the Agreement, including the arbitration clause.  Defendants GCS and RMBT provide no

10   evidence that the Agreement was available to Plaintiff when she signed the August 2009

11   Application.[3]  Thus, Defendants GCS and RMBT have not proven by a preponderance of the

12   evidence that an agreement to arbitrate was formed by Plaintiff signing the August 2009

13   Application.

14   On the other hand, the Court does find that an agreement to arbitrate was created when

15   Plaintiff signed the September 2009 Application.  Plaintiff does not dispute that she signed this

16   application and that the Agreement and its terms (including the arbitration clause) were available to

17   her.  Instead, Plaintiff claims that she did not realize that the Agreement was double-sided, was not

18   aware of the arbitration clause and the back side, and thus cannot be bound by its terms.

19   In California, "[a] party cannot avoid the terms of a contract on the grounds that he or she

20   failed to read it before signing."  *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'r*, 89

21   Cal. App. 4th 1042, 1049 (2001); *see also Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App.

22   4th 1797, 1816 (1994) ("Generally one who assents to a contract cannot avoid its terms on the

23   ground he failed to read it before signing").  While an exception to this rule arises "when the

24   writing does not appear to be a contract and the terms are not called to the attention of the recipient,"

25   _____

26   [3]  Defendants GCS and RMBT argue in their reply that when Plaintiff filled out the August 2009 Application, she would have clicked on the ADS agreement.  Docket No. 58 at 6 ("GCS
27   Reply.").  Defendants GCS and RMBT not only fail to provide any evidence supporting this contention, but their moving papers only state that after Plaintiff complete the August 2009
28   Application, she received a Welcome Packet that included a copy of the Agreement.  GCS Motion at 3.

**United States District Court**
For the Northern District of California

1   this exception only applies where the signing party is not aware that they are signing a contract. *Id.*

2   at 1049-50.[4]

3        In the instant case, the parties do not dispute that the Special Purpose Account Application

4   was a contract. The Application states that by applying for and agreeing to establish a Special

5   Purpose Account, the signatory is bound by the terms and conditions of the Agreement, which is

6   incorporated by reference. Docket No. 37-1. Plaintiff knew she was signing a contract. As Plaintiff

7   had access to the Agreement terms, including the arbitration clause, Plaintiff's failure to read the

8   terms does not permit Plaintiff to avoid its effect where neither party had any reason to doubt they

9   were entering into a contract. Accordingly, the Court finds that Plaintiff agreed to arbitrate when

10  she signed the September 2009 Application.

11            b.      Unconscionability

12       In California, a contractual clause is unenforceable if it is both procedurally and

13  substantively unconscionable. *Flores v. Transamerica Homefirst, Inc.*, 93 Cal. App. 4th 846, 853

14  (2001). Although both procedural and substantive unconscionability must be present, they need not

15  be present in the same degree; instead, "[c]ourts apply a sliding scale: the more substantively

16  oppressive the contractual term, the less evidence of procedural unconscionability is required to

17  come to the conclusion that the term is unenforceable, and vice versa." *Davis v. O'Melveny &*

18  *Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (citation omitted).

19

20  ──────────────

21       [4] Plaintiff's cases do not contradict this rule; the California cases cited by Plaintiff
    invalidated clauses located on the back of a contract on the ground of unconscionability, not a failure

22  to assent. *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 490 (1982) (arbitration clause on
    the back of a long preprinted form contract demonstrated procedural unconscionability); *Truta v.*

23  *Avis Rent A Car Sys., Inc.*, 193 Cal. App. 3d 802, 818, 821 (1987) (location of warranty disclaimer
    on the back went to procedural unconscionability).

24       Plaintiff also cites *Commercial Factors Corp. v. Kurtzman Brothers* for the proposition that
    "a party should not be bound by clauses printed on the reverse side of a document unless it is

25  established that such matters were properly called to its attention and that it assented to the terms
    thereof." 131 Cal. App. 2d 133, 136 (1955). However, *Commercial Factors Corp.* was applying

26  New York law, not California law. While *Commercial Factors Corp.* was cited for this proposition
    by *Windsor Mills, Inc. v. Collins & Aikman Corp.*, it did so in the context of finding that the

27  arbitration clause was located on an "Acknowledgment of Order" form that did not appear on its
    face to be a contract. 25 Cal. App. 3d 987, 993 (1972). Thus, *Windsor Mills* fell into the exception

28  to the general rule, as the signing party was not aware that he was signing a contract.

United States District Court

For the Northern District of California

### i.   Procedural Unconscionability

Procedural unconscionability focuses on "oppression" or "surprise."  "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.  Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them."  *Flores*, 93 Cal. App. 4th at 853.

### a)   Oppression

"Analysis of unconscionability begins with an inquiry into whether the contract was a contract of adhesion – i.e., a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms."  *Id.* at 853.  An adhesion contract fulfills the requirement of procedural unconscionability, although this alone is insufficient to render an arbitration clause unenforceable.[5]

In the instant case, parties do not dispute that the contract is an adhesion contract.  Instead, Defendants GCS and RMBT argue that there is no procedural unconscionability because Plaintiff had choices in deciding how to resolve her debt problems.  This argument ignores California case law finding that "use of a contract of adhesion establishes a minimal degree of procedural unconscionability *notwithstanding the availability of market alternatives*."  *Sanchez v. Valencia Holding Co., LLC*, 201 Cal. App. 4th 74, 91 (2011) (emphasis added) (rejecting the defendant's argument that there was no procedural unconscionability because the plaintiff could have bought his car from a dealer who did not require arbitration).  While California courts have found that consumer choice can reduce how procedurally unconscionable an arbitration clause is, consumer choice is not determinative of whether there is any procedural unconscionability.  *Gatton v. T-Mobile, Inc.*, 152 Cal. App. 4th 571, 583 (2007).

---

[5]  Defendants GCS and RMBT argue that pursuant to *Cornejo v. Spenger's Fresh Fish Grotto*, "simply because a contract may be one of adhesion does not mean it is procedurally unconscionable."  GCS Reply at 8 (citing No. C 09-5564-MHP, 2010 WL 1980236 (N.D. Cal. May 17, 2010).  Defendants GCS and RMBT misread *Cornejo*; *Cornejo* did not find that adhesion was insufficient to show procedural unconscionability, but that adhesion was insufficient to demonstrate unconscionability where the plaintiff did not argue that there was any substantive unconscionability.  2010 WL 1980236, at *6-7 ("The court holds that the Arbitration Agreement, as an adhesion contract, possessed some, but not a substantial degree of procedural unconscionability.").

1    Defendants GCS and RMBT also contend that there is no procedural unconscionability

2    where the adhesion contract is not for an essential good.  GCS Motion at 13.  However, Defendants

3    do not cite any California law for this proposition; *Provencher v. Dell, Inc.* applied Texas law to an

4    arbitration clause, while *Halprin v. Verizon Wireless Services, LLC* concerned New Jersey law.  409

5    F. Supp. 2d 1196, 1202 (C.D. Cal. 2006); No. 07-4015 (JAP), 2008 WL 961239, at *5 (D.N.J. Apr.

6    8, 2008).  Defendants GCS's and RMBT's argument is in fact contradicted by California cases

7    finding that an adhesion contract was procedurally unconscionable even where the contract was for

8    non-essential goods.  *E.g.*, *Sanchez*, 201 Cal. App. 4th at 81 (concerning contract for a Mercedes

9    Benz car); *Gatton*, 152 Cal. App. 4th at 574 (concerning contract for cell phone service and

10   handsets) *McCabe v. Dell, Inc.*, CV 06-7811-RGK (FFMx), 2007 U.S. Dist. LEXIS 40137, at *9-10

11   (C.D. Cal. Apr. 24, 2007) (adhesion contract for a computer was procedurally unconscionable under

12   California law).  Accordingly, Plaintiff has demonstrated that there is some procedural

13   unconscionability because the arbitration clause is contained within an adhesion contract, even

14   though the adhesion contract is for a non-essential good and Plaintiff had other choices available to

15   her.

16                              b)    Surprise

17       Surprise may be determined by the arbitration clause's location.  In *Sanchez*, the court found

18   that an arbitration clause located on the back of a contract that was one page, 8 ½ inches wide, and

19   26 inches long with provisions on both sides constituted a surprise.  201 Cal. App. 4th at 85.  The

20   customer was required to sign or initial the front of the contract in eight places, but none on the

21   back.  *Id.*  Although the arbitration clause was outlined by a black box, the court found that there

22   was surprise because the arbitration clause was located on the back of the document.  *Id.* at 91-92.

23   Furthermore, the court found that actual surprise could be established by the plaintiff's failure to

24   read the contract because "[t]he general rule that one who signs an instrument may not avoid the

25   imposition of its terms on the ground that he failed to read the instrument before signing it applies

26   only in the absence of overreaching or imposition.  Thus, it does not apply to an adhesion contract."

27   *Id.* at 92-93; *see also Bruni v. Didion*, 160 Cal. App. 4th 1272, 1291 (2008).

28

In the instant case, the arbitration clause was located on the back of the double-sided Agreement, which was incorporated by reference into the actual contract and not contained within the contract itself.  Plaintiff was not required to sign any part of the Agreement, including the arbitration clause.  Furthermore, the arbitration clause on the back of the Agreement was not highlighted relative to the other provisions.  Plaintiff also asserts that she never read the arbitration clause until this motion to compel arbitration, demonstrating actual surprise under *Sanchez*.  Docket No. 65 ¶¶ 2-4; *see also Sanchez*, 201 Cal. App. 4th at 92-93.  Taken together, the Court finds that the arbitration clause is procedurally unconscionable for the additional reason that it surprised Plaintiff.

Defendants GCS and RMBT argue that in *Davis v. Global Client Solutions, LLC*, the court found that under Kentucky law, the same arbitration clause was not a "surprise" because "it appears in reasonably-sized font and is written in such a way that is easy to comprehend."  Civil Action No. 3:10-CV-322-H, 2011 WL 4738547, at *3 (W.D. Ky. Oct. 7, 2011).  However, the *Davis* court also found it significant that the arbitration clause was "conspicuously placed on the *first* page of the parties' Agreement."  *Id.* at *3 (emphasis added).  In contrast, the arbitration clause in the instant case is on the back of a double-sided document which was incorporated by reference into the contract.

In sum, the Court finds that the arbitration clause is procedurally unconscionable because of the surprise due to the location of the arbitration clause combined with the oppressiveness of an adhesion contract.

### ii.   Substantive Unconscionability

Substantive unconscionability focuses on "the effects of the contractual terms and whether they are overly harsh or one-sided."  *Flores*, 93 Cal. App. 4th at 853.  California courts have also found substantive unconscionability where an arbitration clause limits the types of remedies that would be available under the statute, thus violating the "principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees."  *Armendariz v. Found. Psychcare Servs., Inc.*, 24 Cal. 4th 83, 103 (2000); *see also Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994) (rejecting arbitration clause that deprived the plaintiff of its statutory right to punitive damages and attorney's fees, and limited the statute of limitations).

In the instant case, the contract terms subject to the substantive unconscionability analysis are: (1) the limitation of liability clause, (2) the attorney's fees and costs clause, (3) the requirement that arbitration occur in Tulsa, Oklahoma, and (4) the unilateral selection of an arbitrator.

a)    Limitation of Liability and Attorney's Fees Clauses

Plaintiff first challenges the limitation of liability clause, which states:

> Under no circumstances shall Global or the Bank ever be liable for any special, incidental, consequential, exemplary or punitive damages.  IN NO EVENT SHALL THE LIABILITY OF GLOBAL OR THE BANK UNDER THIS AGREEMENT EXCEED THE AMOUNT OF FEES YOU HAVE PAID UNDER THIS AGREEMENT.

Docket No. 37-2.  This provision deprives Plaintiff of statutory rights found under the Credit Repair Organizations Act ("CROA"), which permits a customer to be awarded the *greater* of the amount of any actual damage sustained by a customer as the result of the defendant's violation or any amount paid by the customer to the defendant.  15 U.S.C. § 1679g(a)(1) (2006).  The limitation of liability clause in the Agreement limits recovery to the amount paid to Defendants, even if her actual damage is significantly higher.  Furthermore, CROA explicitly permits the award of punitive damages but the limitation of liability clause prohibits punitive damages.  *Id.* § 1679g(a)(2).  Because the limitation of liability clause prevents customers from receiving damages that they are entitled to under CROA, this term is substantively unconscionable.  *E.g.*, *Armendariz*, 24 Cal. 4th at 103; *Graham Oil Co.*, 43 F.3d at 1248; *Circuit City Stores, Inc.*, 279 F.3d at 894-95.

Plaintiff also challenges the attorney's fees and costs clause, which states:

> In any action brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the opposing party to such action such party's reasonable litigation costs and attorneys fees and expenses (including court costs, reasonable fees of accountants and experts, and other expenses incidental to the litigation.

Docket No. 37-2.  This provision contravenes California's Consumers Legal Remedies Act, which requires that court costs and attorney's fees be awarded to a prevailing plaintiff but only permits attorney's fees to a prevailing defendant "upon a finding by the court that the plaintiff's prosecution of the action was not in good faith."  Cal. Civ. Code § 1780  By eliminating this protection for customers, this provision would expose potential plaintiffs to the risk of having to pay Defendants'

12

1    attorney's fees even if they brought suit in good faith.  By permitting exposure to Defendant's

2    attorney's fees and litigation costs, the Agreements may deter customers with legitimate disputes

3    from bringing suit in contravention of their statutory rights.  *Ting v. AT&T*, 319 F.3d 1126, 1151

4    (9th Cir. 2003) (fee-splitting scheme was "unconscionable because it imposes on some consumers

5    costs greater than those a complainant would bear if he or she would file the same complaint in

6    court."); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010) ("We agree that because the

7    fee-shifting clause puts [parties] who demand arbitration at risk of incurring greater costs than they

8    would bear if they were to litigate their claims in federal court, the district court properly held that

9    the clause is substantively unconscionable").  The CROA states that in a successful action, the

10   plaintiff can get the costs of the action and reasonable attorneys' fees.  No provision is made for

11   recovery of fees to a defendant shall it prevail.  *See* 15 U.S.C. § 1679g(a)(3).  The objectionable

12   provisions obviously designed to apply to arbitration must be considered in evaluating the

13   enforceability of the arbitration clause.  *Cf. Armendariz* (examining whether multiple provisions

14   evinces a systematic effort to impose arbitration as an inferior forum).  Defendants argue that these

15   clauses should not be considered in the unconscionability analysis because they are not found within

16   the arbitration clause but outside that clause in other provisions of the Agreement.  They contend

17   that under *Buckeye*, such provisions found outside the arbitration clause may be considered by the

18   arbitration in assessing any challenge based on unconscionability to these provisions.  Thus, these

19   clauses should be separated from the analysis of the arbitration clause itself.  However, Defendants'

20   argument exalts form over substance.  It places a premium with dispositive effect upon the location

21   of the objectionable clause – whether they are written within the arbitration paragraph or the

22   paragraph preceding it – even though the arbitration clause clearly contemplates that all disputes will

23   be resolved through arbitration and that these clauses would apply to arbitration.  Docket No. 37-2.

24   Much like unreasonably short statutes of limitations found to render arbitration clauses

25   unconscionable, *e.g.*, *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1025 n.3 (N.D. Cal.

26   2009).  The Court therefore considers these terms because they were anticipated to limit the scope of

27   the arbitration, which was the only mechanism contemplated by the contract to resolve disputes.

28

United States District Court

For the Northern District of California

b)      Forum and Selection of an Arbitrator

Even if the Court did not consider the limitation of liability and attorney's fee clauses, the arbitration clause is still unconscionable.  First, the arbitration clause requires that consumers arbitrate their claims in Tulsa, Oklahoma, thus giving Defendants GCS and RMBT at unfair advantage at the consumer's expense by requiring that the consumer come to GCS's home city to arbitrate her claims.  *See, e.g.*, *Strotz v. Dean Witter Reynolds*, 223 Cal. App. 3d 208, 216 n.7 (1990) ("The provision in the *Moseley* case requiring arbitration in New York for a dispute in Georgia is illustrative of an unfair arbitration agreement"), *overruled on other grounds by Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996).

Second, the arbitration clause gives Defendant GCS the unilateral right to choose an arbitrator.  Although the arbitration clause require that Defendant GCS select an "independent and qualified arbitrator," the arbitration clause provides no standards to assure such a selection.  California requires that an agreement to arbitrate a claim "provide for a neutral arbitrator.  Unless that . . . requirement is met, the agreement to arbitrate is essentially illusory." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 654 (2004) (citing *Armendariz*, 24 Cal. 4th at 91, 103; *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 825 (1981)).

In *Scissor-Tail*, the California Supreme Court recognized the right of contractual parties "to provide for the resolution of contractual disputes by arbitral machinery of their own design and composition," including the selection of a non-neutral arbitrator.  28 Cal. 3d at 824.  In recognizing this right, the court also found that where:

> the contract designating such an arbitrator is the product of circumstances suggestive of adhesion, the possibility of overreaching by the dominant party looms large; contracts concluded in such circumstances, then, must be scrutinized with particular care to insure that the party of lesser bargaining power, in agreeing thereto, is not left in a position depriving him of any realistic and fair opportunity to prevail in a dispute under its terms.

*Id.* at 824-25.  Thus, where there is an adhesion contract, the court has a duty to determine on a case-by-case basis whether a certain "minimum level of integrity" has been achieved.

"A single arbitrator unilaterally selected by a contracting party adverse to the other is presumed to be biased."  *Sehulster Tunnels/Pre-Con v. Traylor Bros., Inc./Obayashi Corp.*, 111 Cal.

App. 4th 1328, 1341 (2003); *see also Am. Home Assurance Co. v. Benowitz*, 234 Cal. App. 3d 192, 203-04 (1991) ("A contract provision requiring a contract party to arbitrate a dispute before another party to the agreement who is adverse to the first party's interests has been held to be unconscionable and unenforceable.  It is no different when the arbitration is to be held before a single arbitrator unilaterally selected by a contract party who is adverse to the other party, because of a presumptive bias in favor of the party who made the selection."); *Crow Constr. Co. v. Jeffery M. Brown Assoc.*, 264 F. Supp. 2d 217, 220 (E.D. Penn. 2003) ("a neutral arbitrator, that is, an arbitrator chosen *not unilaterally* by the plaintiff, defendant or by an outside party but rather directly or indirectly by both parties") (emphasis added)).

Although the arbitration clause in the instant case requires that Defendant GCS pick an "independent and qualified arbitrator," the unilateral selection of an arbitrator by Defendants via a contract of adhesion raises the specter of unfairness, particularly where no procedure is specified and no criteria other than the conclusory requirement of "independent and qualified" is specified.  When considered with the requirement that the arbitration take place in Defendant GCS's home town, the arbitration clause as a whole evinces a systematic effort by Defendants GCS and RMBT to gain an advantage over the customers.

In their moving papers and at the hearing, Defendants GCS and RMBT stated that they were willing to rewrite the provisions requiring arbitration in Tulsa, Oklahoma and permitting the unilateral selection of an arbitrator.  However, permitting Defendants GCS and RMBT to disclaim unconscionable provisions when confronted with a lawsuit does not render an unconscionable provision conscionable.  *See also Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 304 (4th Cir. 2002) ("The arbitration agreement is unenforceable as written and [the defendant] may not rewrite the arbitration clause and adhere to unwritten standards on a case-by-case basis in order to claim that it is an acceptable one").  The offer to "waive" the provision in this one lawsuit without reforming the objectionable provisions of the Agreement suggests that Defendants intend to maintain a systematic effort to impose unconscionable arbitration provisions.

1    Accordingly, the Court finds the arbitration clause along with the provisions which govern

2    the arbitration is both procedural and substantive unconscionability.  On both ends of the sliding

3    scale, *Davis v. O'Melveny & Myers*, 485 F.3d at 1072, the degree of unconscionability is substantial.

4                    iii.        Preemption and *Concepcion*

5    Having concluded that the arbitration clause is unconscionable, the Court must now address

6    whether, under *Concepcion*, the FAA preempts this unconscionability determination.

7    In their papers, Defendants RMBT and GCS argue that the FAA does not permit invalidation

8    of an arbitration agreement where the defenses "derive their meaning solely from the fact that an

9    agreement to arbitrate is at issue."  GCS Reply at 7.  Defendants RMBT and GCS contend that

10   Plaintiff cannot rely on her inability to vindicate her statutory rights because Plaintiff's arguments

11   would make only the arbitration clause unenforceable.  GCS Reply at 7.  However, *Concepcion* does

12   not preempt a defense simply because it invalidates an arbitration clause and not the remainder of

13   the contract.  Rather, *Concepcion* preempts rules that would "interfere with [the] fundamental

14   attributes of arbitration" – in particular, its informality, expeditiousness, and relative

15   inexpensiveness.  131 S. Ct. at 1748.  The examples given by the Supreme Court as anti-arbitration

16   all affected the fundamental nature of arbitration, such as a rule requiring adherence to the Federal

17   Rules of Evidence, a rule requiring judicially monitored discovery in arbitration, and a rule requiring

18   an ultimate disposition of the arbitration by a panel of twelve lay arbitrators (*i.e.*, a jury).  *Id.* at 174.

19   In the instant case, nonenforcement of the limitations on liability and attorney's fees, the

20   forum selection clause, and the unilateral selection of an arbitrator without meaningful standards do

21   not undermine the fundamental attributes of arbitration.  None of these provisions compromise the

22   informality, expeditiousness, or inexpensiveness of arbitration.  Eliminating the limitations on

23   liability and attorney's fees provision discussed above does not single out the uniqueness of an

24   agreement to arbitrate.  Likewise, the forum selection clause and unilateral standardless selection of

25   an arbitrator are not essential to streamlining the arbitration process, a finding that is supported by

26   RMBT's and GCS's own willingness to do away with both provisions and the fact that it is common

27   for arbitration clauses to contain unobjectionable provisions (such as on specifying an arbitrator is to

28

1  be selected thru the American Arbitration Association or a private well-regarded mediation service).

2  Accordingly, the Court holds that its unconscionability determination is not preempted by the FAA.

3       Moreover, the Supreme Court in its per curiam decision in *Marmet Health Care Center, Inc.*

4  *v. Brown*, 565 U.S. --- (2/12/12) reaffirmed that unenforceability of an arbitration position due to on

5  unconscionability under state common law is not automatically preempted by the FAA.  Slip Op. at

6  5.  The Court must inquire whether the state common law principles are specific to arbitration.

7  Except for the selection process of the arbitration, the provisions found unconscionable above are

8  not specific to arbitration.  As to the selection of the arbiter, the more general principle of neutrality

9  transcends arbitration and applies to all adjudicatory processes.

10                          iv.    <u>Severability</u>

11       Once the Court determines that there is both procedural and substantive unconscionability,

12  the Court must determine whether there should be severance of the unconscionable terms.  In

13  making this decision, the Court will look at the purpose of the contract.  "If the central purpose of

14  the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the

15  illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated

16  from the contract by means of severance or restriction, then such severance and restriction are

17  appropriate."  *Armendariz*, 24 Cal. 4th at 124.  In particular, when an arbitration clause is

18  "permeated" by unconscionability, severance is not required.  *Id.*

19       In *Armendariz*, the California Supreme Court found that two factors weighed against

20  severance: (1) multiple unlawful provisions, indicating a systematic effort to impose arbitration as

21  an inferior forum that works to one party's advantage; and (2) the fact that the court would have to

22  reform the contract by augmenting it with additional terms after striking the multiple unlawful

23  provisions.  *Id.* at 124-25.  In applying *Armendariz*, California courts have focused on whether there

24  were multiple unlawful provisions in determining whether the central purpose of the contract was

25  tainted with illegality.  For example, in *Circuit City Stores, Inc. v. Adams*, the court refused to sever

26  the unconscionable provisions of an arbitration clause, which included limitations on damages and

27  the scope of matters that were covered.  279 F.3d at 896.  Likewise, in *Flores v. Transamerica*

28  *Homefirst, Inc.*, the court refused to sever out the multiple unconscionable provisions because it was

1   unfair to allow the defendant "to refute the unconscionable aspects of the arbitration agreement

2   which [the defendant] itself drafted and from which [the defendant] stood to benefit."  93 Cal. App.

3   4th at 857.  Finally, in *Graham*, the Ninth Circuit chose to strike the entire arbitration clause because

4   the clause contained three different illegal provisions and "represent[ed] an integrated scheme to

5   contravene public policy."  43 F.3d at 1248-49 (citation omitted).

6           In the instant case, the arbitration clause itself contains two unconscionable provisions: (1)

7   requiring that arbitration take place in Oklahoma, and (2) giving Defendant GCS the unilateral right

8   to select an arbitrator without meaningful standards.  Severing these provisions, in particular the

9   selection of the arbitrator, will result in an arbitration clause that contains no process or standards in

10  choosing an arbitrator.  While Defendants GCS and RMBT suggested at the hearing that the Court

11  could require the use of standards by the American Arbitration Association or JAMS, this would

12  require that the Court reform the contract by augmenting it with additional terms (rather than simply

13  striking language).  Such reformation is not permitted.  *See Armendariz*, 24 Cal. 4th at 125.

14          Furthermore, when considering the limitation of liability clause and attorney's fees clause, it

15  appears that the central purpose of the arbitration clause is "tainted" with illegality.  These clauses

16  would have served to limit the damages recoverable by Plaintiff in arbitration, as well as exposing

17  Plaintiff to the risk that she would have to pay Defendants GCS's and RMBT's attorney's fees and

18  other related costs should she lose in arbitration.

19          When combined with the requirement that the plaintiff arbitrate in a distant forum before an

20  arbitrator unilaterally selected by Defendant GCS, the arbitration clause and the applicable

21  substantive limitations as a whole demonstrates a systematic effort to impose arbitration on a

22  customer as an inferior forum.  Nor can the unconscionable provision regarding the selection of an

23  arbitration be mechanically severed.  Accordingly, under *Armendariz*, the Court will not sever the

24  objectionable portions of the arbitration clause.  The arbitration clause as a whole is unconscionable

25  and as such, unenforceable.

26  C.      Defendants ADS's and QSS's Motion to Compel Arbitration

27          Defendants ADS and QSS also move to compel arbitration based on Plaintiff's signing the

28  contract.  Docket No. 39 at 5 ("ADS Motion").  The ADS arbitration clause states:

> All disputes or claims between the parties related to this Agreement shall be submitted to binding arbitration in accordance with the rules of American Arbitration Association. Any arbitration proceedings brought by Client shall take place in Orange County, California. Judgment upon the decision of the arbitrator may be entered into any court having jurisdiction. American Debt Services is responsible for the full payment of the filing fee and the costs of the arbitrator as required by the American Arbitration Association. However, all other expenses of the arbitration shall be borne equally by the parties and each party is responsible for their own attorney fees and costs. Any claim brought pursuant to this Agreement must be filed within one (1) year from the date claim or dispute. [sic]

Docket No. 40-1 at 5.

Plaintiff raises three challenges to the arbitration clause: (1) Defendants ADS and QSS cannot bring this motion to compel arbitration, (2) there was no agreement to arbitrate, and (3) the arbitration clause is unconscionable. Docket No. 48 at 1 ("Opp. to ADS").[6]

    1. <u>Defendants ADS's and QSS's Ability to Bring this Motion</u>

As an initial matter, Plaintiff argues that Defendants ADS and QSS cannot bring this motion to compel arbitration because Defendant ADS is currently a suspended corporation and Defendant QSS was not a party to the contract. As Defendant ADS had achieved active corporate status by the time of the hearing on this motion, the Court need only address the latter argument.

The Court finds that Defendant QSS may bring this motion for two reasons. First, in Plaintiff's complaint, she alleges that "each of the Defendants has acted as an agent, representative or employee of other named Defendants and acted within the scope of that agency, representation, or employment." FAC ¶ 26. Plaintiff further alleges that the "Welcome Packet," bearing Defendant

---

[6] Defendants ADS and QSS also argue that Plaintiff is challenging the contract as a whole, and thus an arbitrator should decide on the enforceability of the entire agreement. Docket No. 60 at 2 ("ADS Reply"). As discussed above, the Ninth Circuit does not require a plaintiff to challenge the validity of the arbitration clause in the complaint. *Bridge Fund Capital Corp.*, 622 F.3d at 1002. As long as the plaintiff challenges the validity of the arbitration clause in opposing the motion to compel arbitration, and that challenge is distinct from the plaintiff's challenges as a whole, the Court may properly decide the issue of arbitrability. *Id.* In the instant case, Plaintiff's challenges to the arbitration clause are distinct from Plaintiff's general claims, which focus on whether Defendants made misrepresentations to induce the sale of their services to customers, were negligent in providing their services, or charged illegal fees. FAC ¶¶ 73, 99, 121. Accordingly, the validity of the arbitration clause is decided by the Court rather than an arbitrator.

United States District Court

For the Northern District of California

1    ADS's name, in fact came from Defendant QSS.  FAC ¶ 35.  Thus, relying on Plaintiff's own

2    allegations, Plaintiff has alleged that Defendant QSS is in effect a party to the contract.

3         Second, California courts have found that "under both federal and California decisional

4    authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff

5    to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in

6    and intertwined' with the underlying contract obligations."  *Boucher v. Alliance Title Co., Inc.*, 127

7    Cal. App. 4th 262, 271 (2005); *see also Rowe v. Exline*, 153 Cal. App. 4th 1276, 1286-87 (2007) ("a

8    signatory to an arbitration clause may be compelled to arbitrate against a nonsignatory when the

9    relevant causes of action rely on and presume the existence of the contract containing the arbitration

10   provision.  In other words, a plaintiff who relies on the contractual terms in a claim against a

11   nonsignatory may be precluded from repudiating the arbitration clause in the contract.").  Here,

12   Plaintiff's claims are based on:  (1) misrepresentations made in inducing Plaintiff to sign the

13   contract; (2) negligence based on duties imposed by the contract on Defendants ADS and QSS; and

14   (3) interference with contractual relations.  As Plaintiff's claims are "intimately founded in" the

15   contract containing the arbitration clause, Defendant QSS may bring this motion to compel

16   arbitration pursuant to this clause.

17         2.    Plaintiff's Challenges to the Arbitration Clause

18              a.    Agreement to Arbitrate

19         Plaintiff again argues that she did not enter into an arbitration agreement.  Rather than claim

20   that she did not sign the ADS contract, Plaintiff argues that there is no proof that the electronic

21   signature on the ADS contract is hers, and argues that other courts have looked at whether a

22   customer was asked to type "Agree" or a verification code in determining whether there was assent.

23   Opp. to ADS at 17-19.

24         In the instant case, the ADS contract was signed using DocuSign, a company that is used to

25   electronically sign documents in compliance with the U.S. Electronic Signatures in Global and

26   National Commerce Act (ESIGN).  Under ESIGN, electronic records and signatures that are in

27   compliance with ESIGN are legally binding.  *Are Electronic Signatures Legal?*, DOCUSIGN,

28   https://www.docusign.com/content/are-electronic-signatures-legal (last visited Jan. 24, 2012); *see*

United States District Court

For the Northern District of California

1    *also* 15 U.S.C. § 7001 (2006).  DocuSign permits a company to send documents to a customer for

2    their signature.  The customer opens the document for review containing areas marked for the

3    signatory to execute.  The signer creates a signature and must click a button saying "Confirm

4    Signing" once they have completed all form fields and signed in all required places.  *How it Works*,

5    DOCUSIGN, http://www.docusign.com/using-docusign (last visited Jan. 24, 2012).  ADS states that it

6    sent the contract to Newton using DocuSign, and the contract is signed by Newton in the Client

7    Signature portion.  Docket No. 60-1 ¶¶ 5-7 ("Graziano Decl.");  Docket No. 60-1, Exh. A.  Once

8    signed, the signature is assigned an identifying code, such as the one that appears above Plaintiff's

9    signature on the ADS contract.  Docket No. 40-1.  Further, the document signed by Plaintiff states

10   that it is a contract, giving Plaintiff notice that she was signing a contract.  Docket No. 40-1.  The

11   arbitration clause is located on the document that Plaintiff signed, giving Plaintiff access to the

12   provision at the time of signing.

13          Plaintiff further argues that Defendants ADS and QSS have not executed the contract yet, as

14   demonstrated by the lack of their signatures on the contract.  However, in both cases cited by

15   Plaintiff, the contract itself required signatures by both contracting parties.  *Copeland v. KB homes*,

16   Civil Action No. 3:03-CV-227-L, 2004 U.S. Dist. LEXIS 30283, at *8 (N.D. Tex. Aug. 4, 2004) ("if

17   the parties to a contract intend for their signatures to be a condition precedent to the formation of a

18   contract, then a contract is not formed unless both parties sign the contract"); *Premiere Chevrolet,*

19   *Inc. v. Headrick*, 748 So. 2d 891, 894 (Ala. 1999) (contract not valid where it required the signature

20   of the defendant to make a contract); *cf ABB Kraftwerke Aktiengesselschaft v. Brownsville Barge &*

21   *Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App. 2003) (signatures not required where there was no

22   evidence that parties intended to require a signature as a condition precedent to the agreement

23   becoming a binding contract).  In the instant case, Plaintiff does not provide any evidence suggesting

24   that Defendants ADS's and QSS's signatures are required to effectuate the contract, and the ADS

25   contract provides no place for a signature by either Defendant.  Plaintiff instead relies on the first

26   paragraph, which states that the contract becomes operative on the date executed by both parties.

27   Defendants ADS and QSS presumably agreed to the contract when they sent Plaintiff the Welcome

28   Packet, explaining the services that would be provided by Defendants ADS and QSS.  Accordingly,

1    the Court finds that Plaintiff assented to the contract and the arbitration clause, and that the

2    arbitration clause is binding on all parties to the contract.

3               b.     Unconscionability

4                      i.     Procedural Unconscionability

5          Like the contract between Plaintiff and Defendants GCS and RMBT, the ADS contract is an

6    adhesion contract.  In order to use Defendant ADS's and QSS's services, Plaintiff was required to

7    accept the terms of the contract as it was imposed by Defendants ADS and QSS, with no opportunity

8    to negotiate the terms of the agreement.  While Defendants ADS and QSS argue that the contract is

9    not adhesive because Plaintiff did not have to use a debt settlement company, consumer choice in

10   choosing the party with whom it contracts does not negate the adhesive nature of the contract.  *See*

11   *Sanchez*, 201 Cal. App. 4th at 91; *Gatton*, 152 Cal. App. 4th at 583.

12         Furthermore, the adhesion contract contains some amount of surprise because it is not

13   particularly noticeable.  The arbitration clause is located on the fourth page of a five-page document,

14   and while it is bolded, the majority of the paragraphs in the document are also bolded.  Docket No.

15   40-1.  Because the ADS contract is adhesive and the arbitration clause is not particularly noticeable,

16   the Court finds that the arbitration clause is procedurally unconscionable, albeit to a minimal extent.

17                      ii.     Substantive Unconscionability

18         The Court finds three objectionable provisions in the arbitration clause.  First, the arbitration

19   clause shortens the statute of limitations.  Both California courts and the Ninth Circuit have found

20   that shortening statutorily-mandated statute of limitations contributes to a finding of substantive

21   unconscionability.  *Graham*, 43 F.3d at 1247-48; *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th

22   107, 117-18 ("The shortened limitations period provided by [the defendant's] arbitration agreement

23   is unconscionable and insufficient to protect its employees' right to vindicate their statutory rights").

24   Here, the arbitration clause gives customers only one year to bring a claim to arbitration.  This

25   significantly shortens the statutory statute of limitations: CLRA has a three-year statute of

26   limitations, California's Unfair Competition law has a four-year statute of limitations, and CROA

27   has a five-year statute of limitations.  Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208; 15

28   U.S.C. § 1679i (2006).

United States District Court

For the Northern District of California

1    Second, the arbitration clause would prevent a customer from recovering attorney's fees.

2    Again, the Ninth Circuit has found that an arbitration clause expressly forfeiting a prevailing party's

3    statutorily-mandated right to recover reasonable attorney's fees contributes to substantive

4    unconscionability. *Graham*, 43 F.3d at 1247.  In the instant case, Plaintiff would have been entitled

5    to attorney's fees under both CROA and CLRA.  15 U.S.C. § 1679g(a)(3); Cal. Civ. Code § 1780(e).

6    By depriving Plaintiff of the opportunity to recover attorney's fees, even when Plaintiff prevails, the

7    arbitration clause demonstrates substantive unconscionability.

8    Third, the arbitration clause requires arbitration in Orange County, California, the home town

9    of Defendants ADS.  This again demonstrates an attempt to benefit Defendants ADS and QSS at

10   Plaintiff's expense by requiring that Plaintiff arbitrate in Defendant ADS's home town regardless of

11   Plaintiff's location, and thus contributes to the substantive unconscionability of the arbitration

12   clause.

13   Taken together, the arbitration clause has three provisions that would impermissibly limit a

14   customer's ability to bring a claim, whether by shortening the statute of limitations, forcing a

15   customer to bear attorney's costs they would not have to under the statutes, or requiring the

16   customer to arbitrate in a distant forum.  Accordingly, the Court finds that the arbitration clause is

17   both procedurally and substantively unconscionable; although the degree of procedural

18   unconscionability is only minimal, the degree of substantive unconscionability is substantial.

19              c.    Severance

20   The Court declines to sever the unconscionable terms in the arbitration clause, and instead

21   finds that the arbitration clause as a whole is unconscionable and therefore unenforceable.  Not only

22   are there multiple unconscionable provisions, but the shortened statute of limitations has the

23   practical effect of limiting a customer's ability to bring a claim to arbitration by requiring a customer

24   to give up their statutorily-mandated statute of limitations and risk losing their claim forever if they

25   did not bring a claim within one year.  Combined with the limitation on attorney's fees and the

26   location of the arbitration in Defendant ADS's home town, the arbitration clause evinces a

27   systematic attempt by Defendants ADS and QSS to gain an unfair advantage over their customers by

28   remitting disputes to an inferior forum.  *E.g.*, *Armendariz*, 24 Cal. 4th at 124.

### III.   CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' motions to compel arbitration. This order disposes of Docket Nos. 36 and 39.

IT IS SO ORDERED.

Dated:  February 22, 2012

_____
EDWARD M. CHEN
United States District Judge