UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER NEWTON, | No. C-11-3228 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION TO STAY** |
| AMERICAN DEBT SERVICES, INC., *et al.*, | **(Docket No. 88)** |
| Defendants. | |

Previously, this Court denied a motion to compel arbitration that was filed by Defendants Rocky Mountain Bank & Trust ("RMBT") and Global Client Solutions, LLC ("GCS"). *See* Docket No. 72 (order). After the Court denied the motion, Defendants appealed the order pursuant to 9 U.S.C. § 16. Currently pending before the Court is Defendants' motion to stay the litigation pending a decision by the Ninth Circuit on whether this Court erred in denying the motion to compel arbitration. Having considered the parties' briefs, as well as the oral argument of counsel and all other evidence of record, the Court hereby **DENIES** the motion to stay.

## I. FACTUAL & PROCEDURAL BACKGROUND

As noted above, previously, the Court denied Defendants' motion to compel arbitration. In denying the motion, the Court rejected Defendants' contention that it could not consider Plaintiff's challenge to the validity of the arbitration clause because she had not included a claim to that effect in her complaint. The Court then found the arbitration clause invalid because it was unconscionable.

With respect to substantive unconscionability, the Court determined that the arbitration clause on its face contained two unconscionable terms: (1) the term giving GCS the unilateral right to choose an arbitrator and (2) the term requiring arbitration in Tulsa, Oklahoma. The Court further found that two additional provisions were unconscionable, namely, the limitation-of-liability provision and the attorney's fee provision. The Court acknowledged that these two provisions were technically not a part of the arbitration clause – *i.e.*, they were located in the contract but outside of the arbitration clause. However, the Court still considered the provisions in evaluating whether the arbitration clause itself was unconscionable because, to do otherwise, would "exalt[] form over substance." Docket No. 72 (Order at 13).

Finally, the Court concluded that the above unconscionable terms could not be severed from the arbitration clause. Accordingly, the Court denied Defendants' motion to compel arbitration.

Defendants have since appealed this Court's ruling to the Ninth Circuit. Defendants currently ask the Court to stay the proceedings before it pending the Ninth Circuit's decision on appeal.

## II. DISCUSSION

A. Legal Standard

The parties do not dispute that Defendants had the right to take an interlocutory appeal with respect to the Court's order denying their motion to compel arbitration. *See* 9 U.S.C. § 16. Thus, the only question for the Court is whether it should stay proceedings while Defendants' interlocutory appeal is pending.

In *Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir. 1990), the Ninth Circuit explicitly held that a district court has discretion in deciding whether to stay proceedings pending an appeal from its refusal to compel arbitration. *See id.* at 1412 (reasoning that a mandatory stay "would allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration"). In making this decision, many lower courts have applied the traditional test that is used to determine whether there should be a stay pending an appeal. *See, e.g.*, *Ferguson v. Corinthian Colleges*, No. SACV 11-0127 DOC (AJWx), 2012 U.S. Dist. LEXIS 1358, at *6-7 (C.D. Cal. Jan. 5, 2012). Those factors are as follows:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation marks omitted). In *Britton*, the Ninth Circuit indicated that, if a "motion [to compel arbitration] presents a substantial question" alone, a district court may issue a stay pending appeal. *Britton*, 916 F.2d at 1412 (emphasis added). This seems to be consistent with the first factor of the *Nken* test, which, according to the Ninth Circuit, does not require a demonstration that success on appeal is more likely than not; rather, under the first *Nken* factor, the moving party need only show that his appeal "raises serious legal questions, or has a reasonable probability or fair prospect of success." *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011). If such a showing is made, the Court must balance the respective hardships of the parties.

In their papers, the parties do not dispute that *Nken* standard is applicable to the pending motion.

B. <u>Serious Legal Questions</u>

Defendants argue that their appeal raises three serious legal questions: (1) whether the Court erred in looking outside of Plaintiff's complaint to determine whether she was making a challenge to the validity of the arbitration clause; (2) whether the Court erred in considering the limitation-of-liability and attorney's fee provisions to be part of the arbitration clause; and (3) whether the Court erred in concluding that severance of the selection-of-arbitrator provision and forum provision was not possible.

    1. <u>Looking Outside of Plaintiff's Complaint</u>

In its order denying the motion to compel arbitration, the Court rejected Defendants' contention that it could not consider Plaintiff's challenge to the validity of the arbitration clause because she had not included a claim to that effect in her complaint. The Court pointed out that, in *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010), the Ninth Circuit expressly held that "the inclusion of, or failure to include, a specific challenge in the complaint is not determinative." *Id.* at 1001. The Ninth Circuit further noted:

> [I]n cases in which the arbitration clause's invalidity is an entirely distinct issue from the contract claims in the case – the clearest cases in which arbitrability is to be decided by the court – we would not generally expect the plaintiff to raise claims against the validity of the arbitration clause in the complaint, because such claims generally would be unrelated to plaintiff's principle prayer for relief. *An independent challenge to the arbitration clause would become relevant only at the point plaintiff is required to oppose a motion to compel. In such a case, like the present one, the challenge to the validity of the arbitration provision would usually appear not in the complaint, but in the pleadings resisting a motion to compel arbitration.*

*Id.* at 1001-02 (emphasis added).

In the currently pending motion to stay, Defendants argue that there is a serious legal question as to whether the Ninth Circuit's decision in *Bridge Fund* is in tension with a Supreme Court case that was issued some four years earlier, *i.e.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). Defendants emphasize that, in *Buckeye*, the Supreme Court looked to "[t]he crux of the complaint" in deciding whether the plaintiff was challenging specifically the validity of the agreement to arbitrate (in which case the court would decide the matter) or whether it was challenging the contract with the defendant as a whole, "either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid" (in which case the arbitrator would decide the matter). *Id.* at 444.

The problem with Defendants' position is that, in *Bridge Fund*, the Ninth Circuit gave an extended discussion as to why *Buckeye*'s "crux-of-the-complaint" rule did not apply. In short, even though Defendants may disagree with the *Bridge Fund* court's analysis of *Buckeye*, the Ninth Circuit has already decided this "serious legal question" in Plaintiff's favor.

2. Limitation-of-Liability and Attorney's Fee Provisions

Defendants contend that there is also a serious legal question as to whether the Court should have considered the limitation-of-liability and attorney's fee provisions to be part of the arbitration clause even though, as a formal matter, they were separate provisions. *See* Docket No. 37 (Hampton Decl., Ex. B) (reflecting separate provisions for arbitration, limitation of liability, and attorney's fees).

4

This is a closer call. Defendants cite authority to support their position. *See Day v. Persels & Assocs.*, No. 8:10-CV-2463-T-33TGW, 2011 WL 1770300 (M.D. Fla. May 9, 2011); *Davis v. Global Client Solns., LLC*, No. 3:10-CV-322-H, 2011 WL 4738547 (W.D. Ky. Oct. 7, 2011). In each of these cases, the court reasoned that it should consider only the arbitration clause specifically, and not other clauses, because, in *Buckeye*, the Supreme Court instructed that a court may consider only a challenge to the arbitration clause specifically (as opposed to the contract as a whole). *See Day*, 2011 WL 1770300, at *4 (stating that, because "the provision limiting punitive damages is found not in the arbitration provision, but under the separate provision entitled 'No liability," the plaintiff was essentially asking "the court to rule on matters outside the arbitration clause" which it could not do under *Buckeye*, where the Supreme Court "held that 'a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator'"); *Davis*, 2011 WL 4738547, at *2 (stating that, under *Buckeye*, the court could consider only challenges to the arbitration provision itself and not terms of the contract outside of the agreement, such as a term limiting the plaintiffs' legal remedies).

In addition to the cases cited by Defendants, there is a case recently decided by Judge Alsup of this District to the same effect. *See Abreu v. Slide, Inc.*, No. C 12-00412 WHA 2012 U.S. Dist. LEXIS 96932, at *10 (N.D. Cal. July 12, 2012) (noting that the "plaintiff challenges the TOU's ninety-day limit on recovery of monetary damages and the shortened, one-year statute of limitations clause, neither of which are part of the arbitration provision"; adding that, under *Buckeye*, "[t]his Court is limited to assessing the validity of the arbitration clause based on terms actually contained therein and not based on terms located in other sections of the TOU").

However, several years earlier, Judge Alsup issued a decision that essentially reached the exact opposite conclusion. In *AT&T Mobility II v. Pestano*, No. C 07-05463 WHA, 2008 U.S. Dist. LEXIS 23135 (N.D. Cal. Mar. 7, 2008), a dealer challenged an arbitration agreement with AT&T as unconscionable, in part because of a provision requiring the dealer to give AT&T notice of a dispute within 120 days. The notice provision was not contained within the arbitration clause itself. Judge Alsup rejected AT&T's contention that

> the validity of the notice provision is an issue for the arbitrator to decide, not the court, because the provision is not contained within the arbitration subsection of the 2006 agreement. It is true that the notice provision is located one paragraph above the arbitration subsection of the contract (both the notice provision and the arbitration subsection fall within the section titled "Disputes"). But because the notice provision profoundly affects the terms in the arbitration subsection – it can operate as a complete bar to arbitration – this order concludes that the notice provision is an inherent part of the arbitration agreement and therefore properly within this Court's review. A contrary conclusion would allow parties to avoid judicial scrutiny merely through clever placement of objectionable arbitration terms.

*Id.* at *14-15. Judge Alsup's reasoning tracks this Court's analysis in the instant case.

In addition to Judge Alsup's *AT&T* case, there are two circuit court cases which suggest that simply because a provision is not formally contained within the arbitration clause, that does not preclude a court from evaluating that provision as implicitly being a part of the arbitration clause. Those cases – both decided after *Buckeye* – are as follows:

- *In re Checking Account Overdraft Litig.*, No. 11-14318, 2012 U.S. App. LEXIS 13836 (11th Cir. July 6, 2012). The Eleventh Circuit found a cost-and-fee-shifting provision unconscionable even though it and the arbitration provision were "located in entirely separate portions of the contract." *Id.* at *35. The court only considered the separate location of the cost-and-fee shifting provision in evaluating whether it was severable. *See id.* (concluding that the cost-and-fee-shifting provision was severable, in part because of the separate location).

- *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006). The defendant argued that, because a provision that limited damages "appears in a separate section of the Policies & Practices from the arbitration agreement, the damages limitation does not apply to disputes resolved in arbitration." *Id.* at 47. The First Circuit disagreed, noting that "[t]he language of the damages limitation itself effectively nullifies this assertion. The damages limitation states that: 'SUCH LIMITATION OF LIABILITY APPLIES IN ALL CIRCUMSTANCES.' This remedies limitation applies any time [the defendant] incurs liability, including in

arbitration."[1] *Id.* The court added that "it would be nonsensical for [the defendant] to create a mandatory alternate resolution system to resolve disputes with its subscribers, and then include a damages limitation that – under the theory [the defendant] offers here – would never apply because all cases would go to arbitration." *Id.*

This Court is convinced that this is the better authority and the lack of any appellate court rulings supporting Defendants' position suggests the lack of a serious legal question. Nonetheless, even if one could argue that there is a serious legal question here, the problem for Defendants is that this Court also found unconscionability based on two terms that were undisputedly a part of the arbitration clause – *i.e.*, the arbitrator selection and forum provisions. In fact, the Court found that those terms alone gave rise to unconscionability. *See* Docket No. 72 (Order at 14) (stating that, "[e]ven if the Court did not consider the limitation of liability and attorney's fee clauses, the arbitration clause is still unconscionable"). Thus, unless Defendants can establish a serious legal question as to those terms, a stay of the proceedings pending appeal would not be appropriate. Those terms are discussed below.

3.  Arbitrator Selection and Forum Provisions

As noted above, the arbitration clause contains two terms which the Court found unconscionable: (1) the term providing that GCS would select the arbitrator and (2) the term providing that the arbitration would take place in Tulsa, Oklahoma. *See* Docket No. 37 (Hampton

---

[1] In the instant case, the limitation-of-liability provision contains similar language: "*Under no circumstances* shall [Defendants] ever be liable for any special, incidental, consequential, exemplary or punitive damages. *IN NO EVENT* SHALL THE LIABILITY OF [DEFENDANTS] UNDER THIS AGREEMENT EXCEED THE AMOUNT OF FEES YOU HAVE PAID UNDER THIS AGREEMENT." Docket No. 37 (Hampton Decl., Ex. B) (emphasis added).

The same is true with respect to the attorney's fee provision: "*In any action* brought by a party hereto to enforce the obligations of any other party hereto, the prevailing party shall be entitled to collect from the opposing party to such action such party's reasonable litigation costs and attorneys['] fees and expenses . . . ." Docket No. 37 (Hampton Decl., Ex. B) (emphasis added).

1 Decl., Ex. B).[2] The Court further found that severance of these terms was not possible because,
2 most notably, it would

> result in an arbitration clause that contains no process or standards in choosing an arbitrator. While Defendants GCS and RMBT suggested at the hearing that the Court could require the use of standards by the American Arbitration Association or JAMS, this would require that the Court reform the contract by augmenting it with additional terms (rather than simply striking language). Such reformation is not permitted.

Docket No. 72 (Order at 18).

In their papers, Defendants argue that there is a serious legal question here because, if the Court had stricken the selection-of-arbitrator term, that would not require it to augment the contract with additional terms. Defendants point out that, under § 5 of the FAA,

> if no method be provided therein [for the naming or appointing of an arbitrator], or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator . . . , or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator . . . , who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . .

9 U.S.C. § 5. Thus, Defendants contend, the "Court could have severed the arbitrator selection terms and, in accordance with section 5, required that AAA or JAMS be used here." Mot. at 9.

As a preliminary matter, the Court takes note that Defendants never raised the § 5 argument in their briefing on the underlying motion to compel arbitration. Nor do they appear to have brought up § 5 during the hearing on the motion to compel (although they did bring up appointment of AAA and JAMS). Thus, the Court should not even entertain this argument because it was waived.

Even if the Court were to consider the argument on the merits, Defendants would fare no better. First, even though Defendants claim that § 5 could, in essence, be used to plug the hole in the

---

[2] The entire arbitration clause reads as follows: "In the event of a dispute or claim relating in any way to this Agreement or our services, you agree that such dispute shall be resolved by binding arbitration in Tulsa[,] Oklahoma utilizing a qualified independent arbitrator of [GCS's] choosing. The decision of an arbitrator will be final and subject to enforcement in a court of competent jurisdiction." Docket No. 37 (Hampton Decl., Ex. B).

arbitration clause if the arbitrator selection provision were stricken, they have cited no legal authority to support that proposition.

Second, Defendants invoke § 5 on the basis that, in the parties' agreement, there was "no method" for appointment of an arbitrator, 9 U.S.C. § 5, but that, of course, is not true. There was a method for appointment of an arbitrator in the agreement (*i.e.*, GCS would select the arbitrator); that provision was simply deemed unconscionable. Therefore, the only provision in § 5 that really could be applicable – at least potentially – is the last provision, *i.e.*, if, "for any other reason," there was a "lapse" in the naming of an arbitrator. *Id.* The Court was not able to find a case holding that "a court's striking of an arbitrator selection clause constitutes a 'lapse in the naming of an arbitrator . . ., or in the filling of a vacancy' under 9 U.S.C. § 5." *Hooters of Am. v. Phillips*, 39 F. Supp. 2d 582, 625 (D.S.C. 1998). Indeed, as the court in *Hooters* noted, "[t]he precedent [largely] deals with cases in which there was an unavailability of a specific arbitrator, or one party refused to select an arbitrator based on a previously agreed upon plan." *Id.* In *In re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554 (2d Cir. 1995), the Second Circuit expressly held that "the 'lapse' referred to in § 5 means 'a lapse in time in the naming of the' arbitrator or in the filling of a vacancy on a panel of arbitrators, or some other *mechanical breakdown* in the arbitrator selection process" – *e.g.*, there was a deadlock in the naming of the arbitrator, the arbitrator's death left a vacancy on the panel, the agreement's procedure for selecting the arbitrator was no longer in effect, or the arbitrator designated in the parties' agreement had conflict of interest. *Id.* at 560-61 (emphasis added). *Hooters* and *Salomon* both suggest that the lapse provision would not apply to the situation here, *i.e.*, where the arbitrator selection provision has been deemed unconscionable by the Court.

Third, even if a court's striking of an arbitrator selection provision could be considered a lapse, courts have generally held that § 5 may be used as a plug-in only where the arbitrator selection provision was not central or integral to the agreement to arbitrate. For example, in *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217 (11th Cir. 2000), the Eleventh Circuit indicated that the failure of a chosen forum (*e.g.*, because the arbitral organization had been dissolved) will preclude arbitration "if the choice of forum is an integral part of the agreement to arbitrate, rather than an

1 'ancillary logistical concern.'"[3] *Id.* at 1222. Most courts, including the Ninth Circuit, have followed
2 the *Brown* approach. *See, e.g.*, *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006)
3 (concluding that an arbitration agreement is enforceable even though the chosen arbitrator cannot or
4 will not act, so long as choice-of-forum provision is not integral to the agreement), *overruled on*
5 *other grounds as stated in Atlantic Nat'l Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931 (9th Cir.
6 2010); *Carideo v. Dell, Inc.*, No. C06-1772JLR, 2009 U.S. Dist. LEXIS 104600, at *19 (W.D.
7 Wash. Oct. 26, 2009) (finding that the selection of the NAF was integral to the arbitration agreement
8 and therefore concluding that appointing a substitute arbitrator would be a wholesale revision of the
9 arbitration agreement).

10 In the instant case, Defendants argue that there is no evidence to show that the arbitrator
11 selection clause was integral to the agreement to arbitrate; but, even if that were the case, that is an
12 evidentiary issue. An evidentiary issue, however, is not enough to create a serious *legal* question.
13 Defendants cite no authority providing otherwise. Moreover, contrary to what Defendants suggest,
14 there is some evidence to show that the arbitrator selection clause was in fact integral. On its face,
15 the clause states that any "dispute *shall* be resolved by binding arbitration in Tulsa[,] Oklahoma
16 utilizing a qualified independent arbitrator of [GCS's] choosing." Docket No. 37 (Hampton Decl.,
17 Ex. B) (emphasis added). Arguably, the term "shall" extends to GCS's right to select the arbitrator
18 and, thus, is indicative of the importance of the arbitrator selection provision to the arbitration
19 agreement. *See, e.g.*, *Ranzy v. Tijerina*, 393 Fed. Appx. 174, 176 (5th Cir. 2010) (finding arbitration
20 forum provision integral where it stated that the plaintiff "'shall' submit all claims to the NAF for
21 arbitration and that the procedural rules of the NAF 'shall' govern the arbitration"); *Reddam*, 45

---

[3] If the arbitration forum is simply

> "an ancillary or logistical concern," the application of Section 5 to appoint a different arbitrator does not do violence to the intentions of the parties. By contrast, when the choice of arbitration forum was integral to the agreement, such that the parties would not have agreed upon arbitration absent the selected forum, application of Section 5 to appoint a substitute arbitrator is more problematical.

*Diversicare Leasing Corp. V. Nowlin*, No. 11-CV-1037, 2011 U.S. Dist. LEXIS 134062, at *13-14 (W.D. Ark. Nov. 18, 2011).

1  F.3d 1054 (indicating that the parties' selection of a specific forum is not exclusive of all other fora
2  "unless the parties have expressly stated that it was" – *e.g.*, where the parties' contract provides that
3  "'[t]he courts of California, County of Orange, shall have jurisdiction over the parties'"); *Carideo*,
4  2009 U.S. Dist. LEXIS 104600, at *15 (finding an arbitrator selection clause integral to the
5  arbitration agreement where clause provided that disputes "'SHALL BE RESOLVED
6  EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE
7  NATIONAL ARBITRATION FORUM'"). *But see Adler v. Dell, Inc.*, No. 08-cv-13170, 2009 U.S.
8  Dist. LEXIS 112204, at *7-8 (E.D. Mich. Dec. 3, 2009) (finding the following clause ambiguous:
9  "'SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION
10 ADMINISTERED BY THE NATIONAL ARBITRATION FORUM'"; noting that the clause could
11 be read to mean that the parties intended to arbitrate all disputes or that they intended to bring
12 arbitration solely before NAF or both).

   4. <u>Summary</u>

Of the three "serious legal questions" identified by Defendants, only one seems a close call – *i.e.*, the second. The first issue is not a serious legal question because the Ninth Circuit already resolved the legal question in *Bridge Fund*. The third issue does not appear to be a serious legal question because Defendants never even brought up the § 5 argument in the briefing on the motion to compel arbitration; furthermore, Defendants do not cite any legal authority to support their position that § 5 can be used to plug a hole in an arbitration agreement after a court strikes part of the agreement.

As for the second issue, even if there were a serious legal question, Defendants run into a different problem, *i.e.*, there were other independent grounds supporting the Court's unconscionability determination.

C. <u>Balancing of Interests</u>

Because the Court does not find there to be even a serious legal question, let alone a likelihood of success on the merits, it need not conduct any balancing of interests (*i.e.*, injury to Defendants if a stay were not granted and injury to Plaintiff if a stay were issued). The Court, however, notes that the injury to Plaintiff if a stay were issued is compounded by the fact that (1)

there are other defendants in the case who also moved to compel arbitration but who did not appeal the Court's order denying the motion and (2) a stay would, as practical matter, mean a stay as to the entire lawsuit such that Plaintiff could not move forward with her case against the non-appealing defendants.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to stay is denied.

This order disposes of Docket No. 88.

IT IS SO ORDERED.

Dated: August 2, 2012

_____
EDWARD M. CHEN
United States District Judge