UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER NEWTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN DEBT SERVICES, INC., *et al.*,<br><br>　　　　Defendants.<br>_____/ | No. C-11-3228 EMC<br><br>**ORDER DENYING DEFENDANTS'**<br>**MOTIONS TO DISMISS**<br><br>**(Docket Nos. 209, 210)** |

　　　　Plaintiff Heather Newton ("Newton") brings an individual and class action against Defendants American Debt Services ("ADS"), Quality Support Services ("QSS"), Rocky Mountain Bank & Trust ("RMBT"), and Global Client Solutions ("GCS") (collectively "Defendants") for alleged violations of state and federal law regulating debt settlement. Currently before the Court are defendant RMBT's and GCS's motions to dismiss Newton's second amended complaint.

　　　　Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Defendants' motions to dismiss.

## I.　　FACTUAL & PROCEDURAL BACKGROUND

　　　　The factual background in this action is set forth more fully in the Court's order granting in part and denying in part Defendants' motions for summary judgment of certain of Plaintiffs' claim. *See* Docket No. 204. What follows is an abbreviated recitation of facts germane to the instant motions.

In August 2009, Plaintiff Heather Newton ("Newton") signed up online for debt settlement services with ADS. *See* Docket No. 206 (Second Amended Complaint, hereinafter "SAC," at ¶ 31). Shortly thereafter, Newton received a Welcome Packet from ADS. SAC, at ¶ 34. After the Welcome Packet, Newton received and signed a Special Purpose Account Application ("Account Application") and the accompanying Account Agreement and Disclosure Statement ("Account Agreement"). *Id*.

ADS and QSS had contracted with GCS to create bank accounts used by clients to "accumulate and disburse funds in connection with the repayment of their debts." *See* SAC, ¶ 4. Accordingly, the Account Application authorized the creation of a bank account (the "Account") with RMBT, a Colorado chartered bank. *See* SAC, ¶ 7. It also authorized GCS to transfer funds from Newton's primary bank account to her Account with RMBT in connection with debt settlement. *See id*. Defendants charged Newton and others fees for their debt settlement services. *See* SAC, ¶ 12.

Some time after signing up, Newton stopped paying her credit card bills and ceased communications with creditors, per Defendants' instruction. *See* SAC, ¶ 41. In March 2010, Newton received a call from one of her creditors, Bank of America. *See id*. at ¶ 42. Bank of America stated she owed $2,200. *See id*. at ¶ 45. Newton learned that defendants had not contacted Bank of America. *See id*. at ¶ 43. Newton asked defendants to pay Bank of America $1,100 from the Account, and Defendants complied. *See id*. at ¶ 47.

In April 2010, Chase, another creditor, served Newton with summons and complaint in a collection action. *See id*. at ¶ 51. Newton subsequently settled the matter with Chase alone. *See id*. at ¶ 56. In June 2010, Newton sent a certified letter to ADS terminating the Account. *See id*. at ¶ 57. Ultimately, Newton paid a total of $4,206.50 to Defendants, of which $70.04 was refunded to her, $2,200 paid to Bank of America, and the balance of which Defendants kept. *See id*. at ¶ 60.

Newton filed the current action for alleged violations of state and federal consumer protection laws in June 2011. *See* Docket No. 1 (Class Action Complaint). GCS and RMBT moved for summary judgment in April 2013. *See* Docket Nos. 142 and 143. This Court granted in part and denied in part Defendants' motions for summary judgment. Docket No. 204. *First*, this Court

granted the motion in favor of Defendants for alleged violations of the CROA and CLRA. *See generally id*. *Second*, this Court held that RMBT could not conspire to violate the Proraters Law and thus granted summary judgment in favor of RMBT as to Newton's UCL claim premised upon a conspiracy to violate the Proraters Law. *See id*. *Third*, this Court denied summary judgment as to the remaining claims, effectively holding that certain claims could proceed to trial – *i.e.*, (1) RMBT could be liable for aiding-and-abetting a violation of the Proraters Law; (2) GCS could be liable for conspiring and/or aiding-and-abetting a violation of the Proraters Law.

Currently before this Court are each of Defendants' motion to dismiss Newton's remaining claims – conspiring or aiding-and-abetting violations of the Proraters Law – on Rule 12(b)(6) grounds.

## II.  DISCUSSION

### A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). While "a complaint need not contain detailed factual allegations. . .it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

As noted above, Defendants GCS and RMBT now move to dismiss the remaining claims that survive after the Court's order on summary judgment.[1] Docket No. 204. At the hearing, Defendants focused the inquiry of these motions for the Court. The critical issue is the impact of the California

---

[1] As a threshold matter, the Court has already ruled on summary judgment that Newton's claims against both GCS and RMBT for direct liability under the CLRA and CROA fail as a matter of law. These claims should have been dismissed with prejudice. To the extent they remain, the Court orders Newton to strike them from the Second Amended Complaint and to file a Third Amended Complaint to reflect these changes.

3

Supreme Court's holding in *Zhang v. Superior Court*, 304 P.3d 163, 176 (Cal. 2013), on Newton's UCL claims predicated on alleged violations of California's Proraters Law. Defendants alternatively contend Newton has failed to allege sufficient facts asserting a plausible claim for relief under *Iqbal* and *Twombly*.

B.      <u>*Zhang*</u>

Defendants contend that the California Supreme Court recently held that a "UCL claim fails if it rests *exclusively* on alleged violations of an act for which there is no private right of action." Docket Nos. 209 (Mot., at pg. 4), 210 (Mot., at pg. 5). Defendants rely on *Zhang*. In *Zhang*, plaintiff sued her insurer under a commercial general liability policy covering her commercial property. Plaintiff asserted causes of action for breach of contract, bad faith, and added a UCL claim. The UCL claim was based in part on alleged "unfair insurance practices" proscribed by statute (*i.e.*, "UIPA"). The insurer demurred to the UCL claim contending that under California Supreme Court precedent in *Moradi-Shalal v. Firemen's Fund Ins. Companies*, 57 Cal.4th 64 (2013) the California legislature did not intend to create a private right of action when it enacted UIPA. The trial court agreed and granted the insurer's demurrer without leave to amend. The appellate court reversed and found plaintiff's false advertising claim an independent basis to support plaintiff's UCL claim. The California Supreme Court affirmed. The California Supreme Court summarized its holding as follows:

> When the Legislature enacted the UIPA, it contemplated only administrative enforcement by the Insurance Commissioner. **Private UIPA actions are absolutely barred**; a litigant may not rely on the proscriptions of section 790.03 as the basis for a UCL claim. However, when insurers engage in conduct that violates both the UIPA and obligations imposed by other statutes or the common law, a UCL action may lie. The Legislature did not intend the UIPA to operate as a shield against any civil liability.

*Zhang*, 57 Cal.4th at 384 (internal citations omitted) (emphasis added). Defendants contend that like the UIPA, the Proraters Law does not provide for a private right action, and accordingly, no action lies for predicate violations of the UIPA.

Newton responds by citing California Supreme Court precedent decided before *Zhang* – *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 183 (1990) – for

the proposition that foreclosing a UCL claim requires the statute to either absolutely bar or clear permit (*e.g.*, safe harbor provision) the conduct at issue, silence is not sufficient. Courts have emphasized how the UCL provides for an *independent* cause of action for "any" unlawful or unfair business practice. It does not enforce another preexisting right but *creates* an independent claim under the UCL, one with different and limited remedies – restitution and injunction. Hence, mere silence as to a private right of action in the underlying statute may not be enough, absent an affirmative intent, to preclude UCL liability. *Zhang*, 57 Cal.4th 364, 387 (2013) (Werdegar, J., concurring); *Stop Youth Addiction*, 17 Cal.4th at 573-574.

The precise parameters of *Zhang* need not be resolved in the case at bar. The Proraters Law, unlike the UIPA in *Zhang*, does not absolutely bar private enforcement for the alleged conduct.[2]

First, the Proraters Law carves out the right of the Department of Corporations Commissioner to sue to enforce its provisions under section 12307.1 (describing Commissioner's power to commence actions to enforce the statute's provisions). Even so, this language is permissive – granting enforcement power to the Commissioner. The law does not contain a stated intent to occupy the field. This is evident from the language of section 12307.1:

> "The commissioner *may* commence and prosecute actions and proceedings to enjoin violations of this division or violations of orders or decisions of the commissioner rendered pursuant to this division, and for the enforcement of any and all civil penalties provided for by this division."

Calif. Fin. Code § 12307.1 (emphasis added). Not only does the statutory provision not contain language explicitly barring private action, its permissive language ("may") leaves room for private action.

Second, no provision of the Proraters Law explicitly prohibits private action generally. Nor does any provision explicitly prohibit private enforcement of the provisions at issue – sections 12200 (licensure) and 12314 (12% fee cap).

Third, other provisions of the Proraters Law are consistent with private action generally:

---

[2] This Court preliminarily observed that the Proraters Law did not appear to provide for a private right of action. *See* Docket No. 204 (Order re Summary Judgment, at pg. 16-17). This pronouncement was not intended to be an exhaustive and final pronouncement.

5

- **Section 12102 (violation; punishment)**: This section envisions criminal enforcement for violations of this "division" (*i.e.*, all Proraters Law provisions).  It further states this does not preclude the Commissioner from acting as well, pursuant to section 12400 (revocation of licensure).  The law presumes a civil action by the victim lies for violation of a penal statute. *See e.g.*, *Stop Youth Addiction*, 17 Cal.4th at 576 (allowing UCL claim predicated on penal code section prohibiting sale of cigarettes to children – UCL claim not predicated on the existence of an explicit private right of action to enforce the penal code).

- **Sections 12206, 12208 (surety bonds, approval thereof)**: These sections provide that a prorater must put up a bond to prorate.  In discussing bond conditions, statute refers to private action: "***persons having a cause of action*** against the obligor of the bond" may enforce against the bond.  Calif. Fin. Code § 12208 (emphasis added).

- **Section 12300.3 (trust accounts; deposits)**: This section indicates that all funds held by licensees are trust funds.  Notably, this section provides that nothing in the Proraters Law shall be construed to preclude *third parties* (*e.g.*, "holders in due course") from "taking any *legal action* necessary to enforce claims" which such third parties "may desire to take including the right to levy attachment and execution."  Calif. Fin. Code § 12300.3 (emphasis added).

- **Section 12307.2 (power of Commissioner to order discontinuance of business)**: This section provides that the Commissioner may issue an order to discontinue the business of a licensee that is unsafe or insolvent.  The section further envisions the role of third parties even with respect to the Commissioner's power to discontinue a business: "The order shall be conditioned to remain in effect unless the commissioner fails to hold a hearing within 15 days after receipt of a written request by the licensee, until set aside by the commissioner in whole or in part, until the licensee is the subject of an order for relief in bankruptcy, or pursuant to a petition filed by the commissioner or *other interested person* a receiver has been appointed by a court of competent jurisdiction."  Calif. Fin. Code § 12307.2 (emphasis added).

- **Section 12316 (excessive charges by a prorater)**: This section provides for the return of monies paid *by the debtor* in excessive of the maximum charges set forth in the Proraters Law.  Some courts have found similar refund language dispositive of the issue of whether a private right of action exists.[3]

---

[3] *See e.g.*, *Goehring v. Chapman University*, 121 Cal. App. 4th 353, 378 (2004) ("[R]efund language explicitly denotes a private right of action.").

6

Fourth, the Proraters Law generally governs contracts between debtors/obligors on the one hand, and proraters on the other, and provides certain protections for debtors/obligors. Those debtors/obligors generally have the right to enforce contract rights through private suits. It would be ironic to hold that the benefits of the Proraters Law's regulation of aspects of such contracts cannot likewise be enforced by private actions but must be relegated exclusively to administrative actions by the Commissioner. *Cf. Lumber Prod. Indus. Workers Local No. 1054 v. West Coast Indus. Relations Ass'n, Inc.*, 775 F.2d 1042, 1049 (9th Cir. 1985) (discussing "local interest exception" that exempts from conflict preemption a private action where the protected interest of the ordinary citizen outweighs a regulatory agency's exclusive jurisdiction).

Accordingly, the Court finds that the Proraters Law does not preclude private rights of action. At the very least, there is no evident intent to bar UCL liability based thereon. Accordingly, the Court rejects Defendants' contention that *Zhang* precludes Newton from asserting a UCL claim predicated on alleged violations of the Proraters Law.

C.  *Iqbal/Twombly*

This Court previously held that Newton had alleged sufficient facts to survive summary judgment on her UCL claim for Defendants' alleged conspiring and/or aiding and abetting violations of the Proraters Law. Docket No. 204. More specifically, this Court found that there were sufficient facts to infer Defendants conspired and/or aided and abetted such violations based on facts in the record indicating the roles of each defendant in the debt settlement enterprise, the apparent splitting of roles to avoid detection, the nature of the transactions involved, and the parties' level of sophistication and experience in the debt settlement industry. Additionally, the Department of Corporation's cease and desist order provided GCS with notice of the Proraters Law's licensure provisions, in addition to the existence of that statute more generally. Similarly, RMBT was provided with analogous notice via the FDIC cease and desist order that their relationship with debt settlement companies should be monitored, and in particular, RMBT should apprise itself of the risks these companies may pose to consumers. *See* Docket No. 164-1 (Ex. 1 to Pltf.'s RJN, ¶ 13) (FDIC Cease and Desist Order) (ordering that RMBT "shall provide adequate and effective oversight over [RMBT's] third-party relationships, specifically focusing on monitoring the activities

of third-party payment processors and their customers, who are referred to herein as Debt Settlement Companies ("DSC")" as well as "[e]nsur[ing] ... compliance with Federal and state consumer protection laws, regulations, and policies ").[4] This Court also found that actual knowledge of licensure could be inferred from the fact that licensure is a matter of public record, the cease and desist order which specifically involved the licensure requirement, and the notion that GCS could not remain willfully ignorant of regulatory requirements relating to licensure, especially having been caught in a regulatory dragnet for the very violations Newton now contends GCS has violated. Therefore, in light of its summary judgment holding, the Court finds that Newton has alleged sufficient facts to survive a motion to dismiss.

### III.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' motions to dismiss. This order disposes of Docket Nos. 209 and 210.

IT IS SO ORDERED.

Dated: February 27, 2014

_____
EDWARD M. CHEN
United States District Judge

---

[4] This Court granted Newton's request for judicial notice of this document. *See* Docket No. 204 (Order re Summary Judgment, at pg. 15 n. 3). The Court properly considers this document on Defendants' motion to dismiss, as it is referenced by Newton's Second Amended Complaint, see Docket No. 206 (SAC, ¶ 113). *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record.").