UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER L NEWTON,<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN DEBT SERVICES, INC, et al.,<br><br>            Defendants. | Case No.  11-cv-03228-EMC   (JCS)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. Nos. 234, 235 |

## I.    INTRODUCTION

        In this individual and class action, Plaintiff Heather L. Newton ("Newton") and

Defendants Rocky Mountain Bank & Trust ("RMBT") and Global Client Solutions, LLC ("GCS")

submitted two joint letters regarding discovery disputes, which the Court construes as Newton's

motions to compel responses to several Requests for Production ("RFPs") and one Request for

Admission ("RFA"). *See* Dkt. Nos. 234, 235. These motions are presently before the Court on an

order of reference from Judge Edward M. Chen, presiding in this case. *See* Dkt. Nos. 236. For the

reasons explained below, the Court GRANTS Newton's motion to compel RMBT to comply with

RFP Nos. 31 and 36 and GCS to comply with RFP No. 30; GRANTS IN PART AND DENIES IN

PART Newton's motion to compel RMBT to comply with RFP No. 32 and GCS to comply with

RFP No. 41; and GRANTS Newton's motion to compel GCS to respond to RFA No. 28.

## II.    BACKGROUND

        The factual background of this case is set out more fully in Judge Chen's previous orders

on motions for summary judgment and motions to dismiss, and only a summary is presented here.

*See* Dkt. Nos. 204 at 2–4 ("Order on MSJ"), 223 at 1–3 ("Order on MTD").

        In August 2009, Plaintiff signed up with American Debt Services ("ADS") for "debt

United States District Court
Northern District of California

settlement and restructure services," which "consist[ed] of negotiating with creditors on behalf of [Newton] for reduction of debt and formulation of a payment plan." *See* Order on MSJ at 2 (citing Dkt. No. 146-1). Quality Support Services ("QSS") provided certain "customer service functions" and other functions to ADS clients. *See* Order on MSJ (citing Dkt. No. 185). When Newton signed up for the debt settlement services with ADS, she authorized RMBT to create a custodial bank account. *See* Order on MSJ at 3 (citing Dkt. Nos. 144, 145-1). Newton also authorized GCS to transfer and disburse funds from her primary checking account into the RMBT account. *See* Order on MSJ at 3 (citing Dkt. No. 163-1). Newton then stopped making payments to and ceased communications with her creditors, per Defendants' instructions. *See* Order on MSJ at 3–4 (citing Dkt. No. 163).

After Newton was contacted by or contacted three of her creditors regarding her debts— apparently, Defendants had never contacted them—Newton terminated her account with ADS. *See* Order on MSJ at 4 (citing Dkt. Nos. 146-4, 163). Ultimately, Newton paid a total of $4,206.50 to Defendants, of which $2,200 was paid to one of her creditors, $70.04 was refunded to her, and the balance was kept by Defendants. *See* Order on MSJ at 4 (citing Dkt. No. 146-4).

Previously, in April 2009, RMBT had consented to a Federal Deposit Insurance Corporation ("FDIC") order to "cease and desist from . . . unsafe or unsound banking practices and violations of laws and/or regulations." *See* Dkt. No. 164-1 at 2 ("Cease and Desist Order"). Paragraph 13 of the Cease and Desist Order provided that RMBT's "board of directors shall provide adequate and effective oversight over the Bank's third-party relationships, specifically focusing on monitoring the activities of third-party payment processors and their customers . . . [and] [e]nsuring . . . compliance with Federal and state consumer protection laws, regulations, and policies." *See id.* ¶ 13.

In June 2011, Newton brought this suit against ADS, QSS, RMBT, and GCS for violations of state and federal consumer protection laws in connection with debt settlement services. *See* Order on MSJ at 4. For the purposes of this order, two sections of the so-called "Proraters Law" of the California Financial Code are at issue. First, the Proraters Law requires the licensure of "proraters," who are defined as "person[s] who, for compensation, engage[] in whole or in part in

2

the business of receiving money or evidences thereof for the purpose of distributing the money or evidences thereof among creditors in payment or partial payment of the obligations of the debtor." *See* Order on MSJ at 17 (quoting Cal. Fin. Code § 12200). Second, the Proraters Law mandates a ceiling above which proraters cannot charge consumers for services; the relevant ceiling in this case is twelve percent for the first $3,000 distributed to creditors. *See* Order on MSJ at 17 (citing Cal. Fin. Code § 12314). There is evidence that ADS and QSS directly violated the Proraters Law. *See, e.g.*, Order on MSJ at 21 (noting evidence to support proposition that RMBT and GCS knew of ADS and QSS's violations of the Proraters Law).

Following RMBT and GCS' motions for summary judgment and motions to dismiss, Judge Chen ruled that although GCS and RMBT cannot be directly liable for violations of the Proraters Law, the following claims could proceed to trial: (1) RMBT could be liable for aiding-and-abetting a violation of the Proraters Law; (2) GCS could be liable aiding-and-abetting a violation of the Proraters Law; and (3) GCS could be liable for conspiring to violate the Proraters Law. *See* Order on MTD at 3, 8.

## III.    DISCUSSION

Newton moves to compel RMBT to comply with RFP Nos. 31, 32, and 36, and GCS to comply with RFP Nos. 30 and 41. *See* Dkt. Nos. 234, 235. Newton also moves to compel GCS to respond to RFA No. 28. RMBT and GCS make various objections.

### A.    Documents Received From or Provided to Federal Regulatory Authorities

For the reasons explained below, Newton's motion to compel RMBT to comply with RFP Nos. 31 and 36 and GCS to comply with RFP No. 30 is GRANTED.

RFP No. 31 requests RMBT to "[p]roduce all documents mentioning debt settlement that RMBT received from or provided to any Federal regulatory authority between June 29, 2007 and December 31, 2013." *See* Dkt. No. 234-1 at 2. RMBT has represented that the only responsive documents fall into two categories: (1) documents and communications exchanged between RMBT and the FDIC pertaining to the Cease and Desist Order, and (2) certain requests for information from the FDIC pertaining to various debt resolution companies. *See* Dkt. No. 234 at 1, 2. RMBT objects to the first category on the basis that such documents are protected from

3

disclosure by FDIC regulations; namely, 12 C.F.R. § 309 *et seq. See id.* at 2. RMBT objects to the second category on the basis that the documents are irrelevant to the claim that RMBT aided and abetted ADS and QSS in violating the Proraters Law, because none of the documents pertain to those two companies. *See id.* at 3. RMBT also objects to the time period of June 29, 2007 to December 31, 2013 as being overbroad because the class period ends on June 29, 2011, and RMBT ceased providing services to California residents in July 2010. *See id.* RMBT also objects to the scope because it is not limited to California consumers or services. *See id.* Ex. 1. at 2.

RFP No. 36 requests RMBT to "[p]roduce all documents relating to actions RMBT took to comply with Paragraph 13, entitled 'Third-Party Risks,' of the [FDIC] Order to Cease and Desist . . . ." *See id.* at 6. RMBT objects on the same bases that it asserts for RFP No. 31. *See* Dkt. No. 234 at 3. RMBT also objects on the basis that the terms "relating to actions RMBT took" and "documents" are vague, burdensome, and overly broad. *See id.* Ex. 1 at 6–7.

RFP No. 30 requests GCS to "[p]roduce all documents mentioning debt settlement that GCS received from or provided to any Federal regulatory authority between June 29, 2007 and December 31, 2013." *See* Dkt. No. 235-1 at 2. GCS objects on the basis that such documents are irrelevant to the claims of whether GCS conspired with or aided and abetted ADS or QSS in violating the Proraters Law. *See* Dkt. No. 235 at 2. GCS also objects on the basis that the documents are protected from disclosure by Office of the Comptroller of the Currency's ("OCC") regulations; namely, 12 C.F.R. § 4.31 *et seq. See id.* GCS also objects to the time period as being overbroad because the class period ends on June 29, 2011 and RMBT ceased providing services to California residents in July 2010. *See id.* GCS also objects on the basis that the term "documents" is vague, burdensome, and overly broad. *See id.* Ex. 1 at 2–3. GCS also objects to the scope because it is not limited to California consumers or services. *See id.* at 3.

### 1.    Relevance and overbreadth

As to RFP No. 31 seeking records from RMBT, the Court finds that the records sought are relevant and not overbroad. As to the first category of documents identified by RMBT, documents and communications with the FDIC regarding debt settlement services and the Cease and Desist Order could contain evidence that RMBT had knowledge of ADS and QSS's violations of the

United States District Court
Northern District of California

1  Proraters Law. *See* Order on MTD at 7 (citing Cease and Desist Order ¶ 13) (in discussion of

2  claim that RMBT aided and abetted the Proraters Law, noting that Cease and Desist Order gave

3  RMBT notice that its relationship with debt settlement companies should be monitored). Such

4  records may also contain evidence that RMBT provided "substantial assistance" to ADS and QSS.

5  *See* Order on MSJ at 22 (noting that ordinary business transactions—such as provision of banking

6  services that enabled the debt settlement enterprise—could constitute "substantial assistance").

7  As to the second category of documents identified by RMBT, requests made by the FDIC

8  pertaining to various debt resolution companies, even if not pertaining to ADS or QSS, could shed

9  light on the types of information RMBT kept in its records regarding the debt resolution

10  companies that it worked with. *See* Dkt. No. 234 at 2. *See also* Order on MTD at 7 (citing Cease

11  and Desist Order ¶ 13) (noting that RMBT should apprise itself of the risks that debt settlement

12  companies may pose to consumers).

13  As to both categories of RFP No. 31, Newton argues that documents generated after the

14  class period are relevant because "any enforcement would have happened *after* the offending

15  conduct." *See* Dkt. No. 235 at 1 (emphasis in original). The Court agrees that the time period is

16  not overbroad. Communications with federal agencies regarding any enforcement or other

17  inquiries occurring after the class period could contain evidence relevant to RMBT or GCS's

18  actions or knowledge during the class period.

19  As to RFP No. 36 seeking records from RMBT, the Court finds that the records sought are

20  relevant and not overbroad. Documents relating to RMBT's actions to comply with the provisions

21  of the Cease and Desist Order that pertained to third-party risks could contain evidence that

22  RMBT assisted or had knowledge of ADS and QSS's violations of the Proraters Law.

23  As to RFP No. 30 seeking records from GCS, the Court finds that the records sought are

24  relevant and not overbroad. Documents and communications with federal regulatory agencies

25  could contain evidence that GCS had business relationships with or had knowledge of ADS and

26  QSS's violations of the Proraters Law.

27          **2.**        **Federal regulations governing disclosure**

28  In addition to their relevance and overbroadness objections, RMBT and GCS argue that the

documents sought by Newton are protected from disclosure by FDIC and OCC regulations governing the release of non-public information. *See* Dkt. Nos. 234 at 2 (citing FDIC regulations at 12 U.S.C. § 309 *et seq.*), 235 at 2 (citing OCC regulations at 12 U.S.C. § 4.31 *et seq.*). Newton argues that a controlling Ninth Circuit decision precludes these arguments. *See* Dkt. Nos. 234 at 1 (citing *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994)), 235 (same). The Court agrees with Newton. As a practical matter, the issue boils down to whether the agencies' regulations or the Federal Rules of Civil Procedure should control when the two conflict. There is a split in authority on this issue but, in the Ninth Circuit, the Federal Rules of Civil Procedure generally trump the regulations.[1] *See Exxon*, 34 F.3d at 780.

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and that, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

The FDIC and the OCC, like several other banking-related agencies, have regulations that govern the release of non-public information. Specifically, the FDIC regulations provide that records related to examination, operating, or condition reports prepared by, on behalf of, or for the use of the FDIC are exempt from disclosure. *See* 12 C.F.R. § 309.5(g). The regulations further provide that a person seeking "disclosure of exempt records or testimony in litigation to which the FDIC is not a party" must submit a request to be decided at the FDIC's discretion. *See id.* § 306.6(b)(8). The OCC regulations provide that certain records, such as "[a] report of examination, supervisory correspondence, an investigatory file compiled by the OCC . . . in

---

[1] *See Wultz v. Bank of China, Ltd.*, — F.R.D. —, 2013 WL 1453258, at *2 (S.D.N.Y. 2013), *reconsideration denied*, 291 F.R.D. 42 (S.D.N.Y. 2013) (citing *Touhy v. Ragen*, 340 U.S. 462 (1951)) (in case involving OCC regulations at 12 U.S.C. § 4.31 *et seq.*, stating that "[s]etting aside the details of the doctrinal disputes that underlie the various Circuits' positions, the practical effect of the disagreement is that the Second, Fourth and Tenth Circuits as a general rule give primacy to agencies' *Touhy* regulations over the Federal Rules of Civil Procedure when the two conflict, requiring litigants to exhaust their administrative remedies before moving to compel production from a governmental agency, while the D.C., Ninth, and Sixth Circuits generally give primacy to the Federal Rules over conflicting *Touhy* regulations.") (citations omitted).

United States District Court
Northern District of California

1   connection with an investigation," are non-public. *See id.* § 4.32(b)(1)(iii). The regulations further

2   provide that a person seeking non-public OCC information must submit a request to be decided at

3   the OCC's discretion. *See id.* § 4.33.

4          These regulations were promulgated under the so-called "Housekeeping Statute," 5 U.S.C.

5   § 301, which provides:

6          The head of an Executive department or military department may
       prescribe regulations for the government of his department, the
7          conduct of its employees, the distribution and performance of its
       business, and the custody, use, and preservation of its records,
8          papers, and property. *This section does not authorize withholding*
       *information from the public or limiting the availability of records to*
9          *the public.*

10

11   5 U.S.C. § 301 (emphasis added). According to legislative history, the second sentence was added

12   in 1958 because the statute had been "twisted from its original purpose as a 'housekeeping' statute

13   into a claim of authority to keep information from the public . . . ." *Exxon*, 34 F.3d at 777 (quoting

14   2 U.S. Code Cong. & Admin. News 3352 (1958)).

15          In *Exxon*, the Ninth Circuit addressed several agencies' regulations, also promulgated

16   under § 301, which provided that an agency employee may not be deposed unless an agency head

17   authorizes it. *See Exxon*, 34 F.3d at 776. The defendant in an ongoing federal case brought suit

18   against the agencies to compel certain employees' depositions under the Federal Rules of Civil

19   Procedure, but the district court held that the agencies' regulations prevented this discovery. *See*

20   *id.* at 775. The Ninth Circuit reversed, holding that § 301 "does not create an independent

21   privilege to withhold government information." *Id.* at 780. The court explained that "district courts

22   should apply the federal rules of discovery when deciding on discovery requests made against

23   government agencies, whether or not the United States is a party to the underlying action." *Id.* The

24   court further explained that courts should use the federal rules' balancing test to prevent discovery

25   where it would create an undue burden, and that other independent privileges—such as the state

26   secrets privilege or qualified executive privilege—should be upheld where applicable. *Id.*

27          For the purposes of this order, the critical holding in *Exxon* is that § 301 does not create an

28   independent privilege. *See id.* at 780. In making this holding, the Ninth Circuit observed that "the

1958 amendment explicitly sought to eliminate any perception that [§ 301] created an executive privilege." *See id.* at 777 (citing *Harvey Aluminum v. NLRB*, 335 F.2d 749, 755 (9th Cir. 1964); *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961)). Following *Exxon*, the Sixth Circuit specifically addressed regulations promulgated pursuant to § 301 that are similar to those at issue in this case. *See In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995). In *In re Bankers Trust*, the Sixth Circuit held that Federal Reserve regulations governing disclosure of non-public documents exceeded the statutory authority of § 301. *See id.* at 470–71. In so holding, the court concluded that "Congress did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information." *Id.* at 470. The court reasoned that "[t]o allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here." *See id.* (citing *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992)). *See also Marketing Investors Corp. v. New Millennium Bank*, No. 3:11-cv-1696-D, 2012 WL 1357502, at *7 (N.D. Tex. Apr. 16, 2012) (holding that FDIC regulations at 12 C.F.R. § 309 *et seq.* exceeded congressional delegation of authority and "do not create an exemption or privilege from discovery for the responsive records and information in Defendant's possession, custody or control that belong to the FDIC in this case").

Here, RMBT and GCS assert that the FDIC and OCC regulations at 12 C.F.R. § 309 *et seq.* and 12 C.F.R. § 4.31 *et seq.*, promulgated under 5 U.S.C. § 301, create a privilege that protects the requested documents. *See* Dkt. Nos. 234 (citing FDIC regulations, arguing that "the privilege from disclosure belongs to the FDIC and it is the FDIC that has the discretion to waive that privilege"), 235 (citing OCC regulations, arguing that "because the privilege belongs to the OCC, Plaintiff must make a request to the OCC before seeking any documents or information from GCS") (emphasis removed). However, RMBT and GCS misunderstand the law. In the Ninth Circuit, § 301 and regulations promulgated pursuant to its authority do not create an independent privilege. *See Exxon*, 34 F.3d at 780.

United States District Court
Northern District of California

1    RMBT and GCS appear to conflate the regulations with the bank examination privilege,

2    which is an independent privilege that is held by the agencies, and which should be analyzed

3    separately. *See, e.g.*, *In re Bankers Trust*, 61 F.3d at 471–72 (after determining that FDIC

4    regulations were not independent basis for defendant bank to withhold information, separately

5    analyzing whether documents were protected by bank examination privilege); *Marketing Investors*

6    *Corp.*, 2012 WL 1357502, at *5 (same). *See also In re JPMorgan Chase Mort. Modification*

7    *Litigation*, 11-md-02290-RGS, 2012 WL 5947757, at *2 (D. Mass. Nov. 27, 2012) (in denying

8    motion to compel production from defendant bank, requiring plaintiffs to follow OCC procedures

9    to obtain records protected by bank examination privilege; court had previously ordered bank to

10   produce all non-privileged records before requiring adherence to OCC procedures).

11   Other than the attempt to assert the FDIC and OCC regulations as privileges, RMBT and

12   GCS assert no other privileges. Because no valid privileges have been asserted over the requested

13   materials, and because RMBT and GCS do not dispute that they have possession, custody, or

14   control of the requested documents, the Court orders their production under Rule 26 of the Federal

15   Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding

16   any *nonprivileged* matter that is relevant to any party's claim or defense.") (emphasis added), 34

17   (parties may request documents in responding party's "possession, custody or control");

18   *Marketing Investors Corp.*, 2012 WL 1357502, at *5 (rejecting defendant bank's argument that as

19   a result of FDIC regulations, it did not have "possession, custody, or control" within the meaning

20   of Fed. R. Civ. P. 34, and ordering production). *See also Wultz*, 2013 WL 1453258, at *6

21   (acknowledging that in the Second Circuit, the OCC was protected from disclosing materials by its

22   regulations and sovereign immunity, but ordering defendant bank to produce materials because

23   regulations did not protect private litigants).

24   The Court acknowledges that there are authorities supporting RMBT and GCS's position

25   that § 301 creates an independent privilege. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*

26   *v. Midland Bancor, Inc.*, 159 F.R.D. 562, 571 (D. Kan. 1994) (on motion to compel production

27   from FDIC, finding that 12 C.F.R. § 309 *et seq.* created an independent privilege and requiring

28   plaintiff to seek records through administrative process); *F.D.I.C. v. Flagship Auto Ctr., Inc.*, 3:04

9

1    CV 7233, 2005 WL 1140678, at *5–*6 (N.D. Ohio May 13, 2005) (on motion to compel

2    production from Federal Reserve, assuming that agency's regulations promulgated under 5 U.S.C.

3    § 301 created independent privilege and requiring plaintiff to seek records through administrative

4    process). To the extent that these authorities conflict with the Ninth Circuit's holding in *Exxon* that

5    § 301 does not create an independent privilege, this Court declines to follow them.

6          The Court also acknowledges that there are authorities to support the position that a litigant

7    must comply with agency regulations before seeking the court's assistance in obtaining records

8    from banks or agencies. *See, e.g.*, *Am. Sav. Bank v. Painewebber Inc.*, 210 F.R.D. 721, 723 (D.

9    Haw. 2001) (finding that plaintiffs were required to request unpublished Office of Thrift

10   Supervision records through administrative process before matter was ripe for court to decide); *In*

11   *re Countrywide Fin. Corp. Sec. Litig.*, 07-CV-5295-MRP MANX, 2009 WL 5125089, at *2 (C.D.

12   Cal. Dec. 28, 2009) (citing *Painewebber*, finding that plaintiffs were required to request non-

13   public OCC records through administrative process before matter was ripe for court to decide);

14   *Bay Bank v. f/v ORDER OF MAGNITUDE*, C05-5740-RBL, 2007 WL 737344, at *2 (W.D. Wash.

15   Mar. 7, 2007) (finding that plaintiffs were required to request FDIC records through administrative

16   process before matter was ripe for court to decide); *Raffa v. Wachovia Corp*, 242 F. Supp. 2d

17   1223, 1225 (M.D. Fla. 2002) (finding that plaintiffs were required to request non-public OCC

18   records through administrative process before matter was ripe for court to decide); *Union Planters*

19   *Bank, N.A. v. Cont'l Cas. Co.*, 02 CV 2321 MA/P, 2003 WL 23142200, at *2 (W.D. Tenn. Nov.

20   26, 2003) (same, following *Raffa*); *W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico*, CIV.

21   11-2271 GAG/BJM, 2013 WL 6001087, at *2 (D.P.R. Nov. 12, 2013) (in denying motion to

22   compel production from non-party bank, recognizing split in authority and adopting approach

23   requiring exhaustion of administrative procedures, "especially in light of the fact that [FDIC in its

24   corporate capacity] is a party to this litigation . . .").

25          However, the Court disagrees that exhaustion of administrative procedures is required in

26   this case. Unlike the agencies in several of the above-cited cases, the agencies here have not

27   asserted any privileges or otherwise stated a position on the disclosure of the requested documents.

28   *Cf. Painewebber*, 210 F.R.D. at 722 (counsel for Office of Thrift Supervision filed letter); *In re*

*Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 5125089, at *1 (counsel for Federal Reserve Board and OCC filed letters); *Union Planters Bank*, 2003 WL 23142200, at *1 (counsel for OCC appeared at hearing). Further, the Court agrees with those cases that have found it "illogical" to abandon the federal rules and instead require a litigant to follow the "much more cumbersome procedure[s]" prescribed by the regulations under similar circumstances. *See In re Bankers Trust*, 61 F.3d at 471. *See also Marketing Investors Corp.*, 2012 WL 1357502, at *6 (finding "no compelling reason to discard the relatively straight-forward discovery methods under the federal rules for the FDIC's much more cumbersome procedure in this case").

Accordingly, Newton's motion to compel RMBT to comply with RFP Nos. 31 and 36 and GCS to comply with RFP No. 30 is GRANTED.

### B.   Documents Exchanged Between Defendants

RFP No. 32 requests RMBT to "[p]roduce all documents that RMBT sent to or received from any other defendant in this action between June 29, 2007 and December 31, 2013, related to debt settlement services." *See* Dkt. No. 234-1 at 4. As to documents exchanged with ADS and QSS, RMBT represents that it has no documents sent to or received from these companies. *See id.* at 4. As to documents exchanged with GCS, RMBT objects on the basis that any documents exchanged between it and GCS do not pertain to "debt settlement services" because neither company is in the debt settlement services industry. *See id.* RMBT also objects on the basis that the request is overbroad in seeking documents that are not limited to California consumers of ADS and QSS, and that are outside the defined class period. *See id.* RMBT represents that the only documents exchanged with GCS pertain to traditional banking services by RMBT and account maintenance services by GCS. *See id.* RMBT also objects on the basis that the term "document" is vague, burdensome, and overly broad. *See id.*

RFP No. 41 requests GCS to "[p]roduce all documents that GCS sent to or received from any other defendant in this action between June 29, 2007 and December 31, 2013, related to debt settlement services." *See* Dkt. No. 235-1 at 12. GCS objects on the basis that the phrases "documents" and "related to debt settlement services" are vague, burdensome, and overbroad. *See* Dkt. No. 235 at 3. GCS further argues that because this request is not narrowed by subject, it

11

1   would be required to locate and review "tens of thousands of documents" to comply. *See id.*

2       The Court finds that these requests are overbroad because they would include records

3   irrelevant to the issues of whether RMBT or GCS aided or abetted ADS or QSS in violating the

4   Proraters Law. As to RFP No. 32, the discoverable records are those "related to debt settlement

5   services" between RMBT and GCS relating to custodial bank accounts for California clients

6   within the requested time period. As to RFP No. 41, the discoverable records are those "related to

7   debt settlement services" between GCS and other Defendants relating to California clients within

8   the requested time period.

9       Accordingly, Newton's motion to compel RMBT to comply with RFP No. 32 and GCS to

10  comply with RFP No. 41 is GRANTED IN PART AND DENIED IN PART, as described above.

11          **C.      Request for Admission**

12      Request for Admission No. 28 requests GCS to "[a]dmit that between June 29, 2007 and

13  June 29, 2011, GCS administered accounts established for the debt settlement programs of QSS's

14  California clients, at banks other than RMBT." *See* Dkt. No. 235-2 at 8. GCS objects on the basis

15  that the only bank relevant to this lawsuit is RMBT. *See id.* Newton argues that one of GCS's

16  defenses is that it is RMBT's agent, and evidence that other banks also controlled GCS makes it

17  less likely that GCS was actually RMBT's agent. *See* Dkt. No. 235 (citing *Cox v. Kaufman*, 77

18  Cal. App. 2d 449, 452 (1946)).

19      The Court agrees with Newton and finds that the information sought is relevant because

20  could provide evidence that GCS was not RMBT's agent. *See CenterPoint Energy, Inc. v.

21  Superior Court*, 157 Cal. App. 4th 1101, 1118 (2007) (citing 3 Witkin, Summary of Cal. Law

22  (10th ed. 2005) Agency, § 93, at 140–141) ("The existence of agency or employment is mainly a

23  question of fact . . . . The significant test of an agency relationship is the principal's right to

24  control the activities of the agent.").

25      Accordingly, Newton's motion to compel GCS to respond to RFA No. 28 is GRANTED.

26  **IV.   CONCLUSION**

27      For the reasons explained above, Newton's motion to compel RMBT to comply with RFP

28  Nos. 31 and 36 and GCS to comply with RFP No. 30 is GRANTED; Newton's motion to compel

United States District Court
Northern District of California

RMBT to comply with RFP No. 32 and GCS to comply with RFP No. 41 is GRANTED IN PART AND DENIED IN PART; and Newton's motion to compel GCS to respond to RFA No. 28 is GRANTED. Within fourteen days of this order, RMBT and GCS shall produce the documents and provide the responses in accordance with this order.

**IT IS SO ORDERED.**

Dated: May 13, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge